Cain v. The State.

BARNEY CAIN AND ANOTHER V. THE STATE.

In the construction of Acts of the same Session, the rule is that the whole must be taken as one Act; and to make a latter provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them; and then the latter will control.

The Codes were designed to form a system of criminal law complete in itself. That was the theory. But it was not supposed that they were already sufficiently perfected to meet all the exigencies and wants of society; and hence other laws upon the subject were enacted from time to time, as the occasion suggested.

The Act to authorize the County Courts of the State to grant a license for the retail of spirituous, vinous and other intoxicating liquors in quantities less than a quart, and imposing a license tax for such privilege, approved February 2d, 1856, was not repealed by the Penal Code and Code of Criminal Procedure enacted at a subsequent period of the same Session.

Where two defendants were jointly indicted for the violation of a license law, and the jury "found them guilty and assessed the fine at fifty dollars," upon which the Court below rendered judgment against each defendant for fifty dollars, it was held, on appeal, that the judgment should have been rendered against the defendants jointly for fifty dollars only, and it was reformed accordingly.

Appeal from Bastrop. Tried below before the Hon. A. W. Terrell.

Indictment charging Barney Cain and John Persons with selling intoxicating liquors, on the first day of July, 1857, in quantities less than a quart. Motion to quash the indictment, on the ground that there was no such offence known to the laws of the State. Motion overruled. Verdict as follows: "We, the jury, find the defendants guilty, and assess the fine at fifty dollars." Judgment against each defendant for fifty dollars.

C. C. & A. D. McGinnis, for appellants. I. The Penal Code and Code of Criminal Procedure, adopted at the adjourned Session of the last Legislature, and approved on the 26th August, A. D. 1856, repealed the statute of 2d February, 1856; and there is not and was not at the time appellants sold intoxicating

liquors in quantities less than a quart, any law in force prohibiting them from doing so. (See Penal Code, Articles 1, 12, 15, and 54, and latter part of page 167. Also see the Code of Criminal Procedure, Preamble and Section 1st. Also final title, Sections 2, 3, and 4.)

It may be contended by the attorney for the State, that the statute of February, 1856, and the one adopting the Codes, being passed by the same Legislature, must be construed together; but we hardly deem it necessary to cite authority to this Court, to sustain the position, that the Legislature can repeal a statute the same Session it was passed. But we will refer the Court to a decision at Tyler, April Term, 1857: The State v. Robinson, where the Court held "it would be difficult to maintain that it (the law in question) was not virtually and impliedly, though not expressly repealed by the institution of an entirely new system of laws on the subject, upon the change of government;" and in the subsequent part of the same decision the Court held the repeal would nevertheless be sustained, though it were not expressly intended in the repealing statute. (See the Southern Intelligencer, Vol. 2, No. 10.)

In the case now before the Court we hardly deem it necessary to discuss the question of repeal of statutes by implication; for on the latter part of the 167th page of the Penal Code, the Legislature, after repealing by enumeration various Acts, use the following language: "Together with all other laws and parts of laws relating to crimes and punishments, are hereby repealed."

II. It was error to render judgment against the defendants for fifty dollars each, upon a verdict finding a fine of fifty dollars against the defendants jointly.

*Attorney-General,* for appellee. I. The Code was passed at the same Session with the Act of February 2, 1856, and a liberal construction will be adopted in order to sustain both enactments. (9 Bac. Abr. 225; Sedg. Cons. and Stat. Law, 122, 127; Foster's Case, 11 Co. R. 63; 3 Mon. R. 80; Const. of this State, Art. 3, Sec. 22.)

II. The Code, a statutory Act, is a general law upon crimes and punishments. The License Act is special. Its leading object was to regulate the business of retailing liquors, and to raise a revenue for special purposes. To enforce its provisions it is made penal to violate the Act. The penal clauses then refer

particularly to the single offence of selling without license. (Sedgw. Con. & Stat. Law, 123.)

III. There is no repugnancy between the two Acts. The first article of the Code is in the nature of a preamble. Neither this or any other provision indicates that it was intended to embrace all and every offence, without regard to laws passed at the same Session upon the same subject. To constitute a repugnancy, it is necessary that two Acts shall relate to the same subject, and shall make contradictory or inconsistent provisions upon that subject. The Code does not profess to make any provision whatever for the offence of retailing liquor without license. (Id. 127; Bowen v. Lease, 5 Hill, 221; Canal Co. v. R. R. Co., 4 Gill & Johns. 1; Street v. Comm., 6 W. & S. 209; Comm. v. Bank, 10 Barr, 442; Brown v. County Com., 21 Penn. 37; Williams v. Potter, 2 Barb. S. C. R. 316; Comm. v. Herring, 6 Cush. 465.)

IV. It was manifestly not intended to repeal the Act of February 2, 1856, as appears from the history of the legislation on the subject. The Codes were reported by the Commissioners, and action had been taken upon them in the Legislature before the passage, or even the introduction of the License Law. Of course then the repealing clauses, which were part of the original bill, could have no reference to a statute not in existence, and indeed not introduced. This part of the subject is well discussed in the case of Delesdenier v. The State, 7 Tex., which though the decision of a special Court, and therefore in strictness not authority, is yet entitled to all the weight which clear, lucid, sound and forcible reasoning can give to any case.

V. Upon the whole case it seems to be beyond controversy that both Acts or rather the three Acts may stand. Indeed, if the rule invoked in aid of the notion that the License Law is repealed, were carried out in strictness, we might, with equal propriety, conclude that the Penal Code, which was approved the 28th of August, had repealed the Code of Procedure passed two days before. If the three Acts be regarded as laws upon the same subject, the rule laid down in the Kentucky case, (3 Mon. 80,) would well apply, and they would all be held to be one Act, or rather construed as if embodied in one.

When we come to recollect that for various causes incident to legislation, an Act introduced very early in the Session may be delayed, and another subsequently brought forward may be first passed into a law, the propriety of the principles to which I

have alluded, as governing the question, will be strikingly apparent.

WHEELER, J.   This indictment was found under the 5th Section of the Act of the 6th Legislature, entitled "An Act to authorize the County Courts of this State to grant a license for the retail of spirituous, vinous and other intoxicating liquors in quantities less than a quart, and imposing a license tax for such privilege," approved February 2d, 1856.   (Pamphlet Acts, p. 67.)

The material question to be determined is whether this Act was repealed by Acts of a later date, passed by the same Legislature.   It is insisted for the appellants that it was ; and we are referred, in support of this opinion, to several provisions of the Penal Code and the Code of Criminal Procedure.

Without dwelling to quote the several provisions referred to, it will suffice to observe, that in none of them is there, nor is it contended that there is, an express repeal of the Act in question, or any repugnancy to its provisions.   If repealed, it must be by general words of repeal of former laws, or by implication.

In considering the question, it is important to observe, that both the Act supposed to be repealed, and the supposed repealing Act, are Acts of the same Legislature.   This, it is conceived, renders inapplicable the ordinary rules of construction employed to determine whether former laws have been repealed by the enactments of a subsequent Legislature.   By attending to this distinction, and applying the rule which governs the construction of Acts passed at the same Session, the question, we think, is freed from difficulty.   The rule is, that in the construction of Acts of the same Session, the whole must be taken and construed as one Act, and to make a latter provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them ; and then the latter will control. (3 Moore, 77 ; Sedg. on Stat. and Const. Law, 415.)   The case of Peyton v. Moseley, determined by the Court of Appeals of Kentucky, is a stronger case, it is conceived, of the apparent repeal, by the Legislature, of a prior Act, by one subsequently passed at the same Session, than the legislation in question affords ; and yet the Court held there was no repeal.   An Act of the Legislature prescribed the form of a recognizance to be taken in certain cases, concluding with the words, "witness my hand and

seal." A subsequent Act of the same Session abolished the use of seals, putting sealed and unsealed instruments on the same footing. It was insisted that the latter Act repealed the former. But the Court said : "It is true, as observed by the Court below, the expressions of this latter Act are very broad, and if it had not passed at the same Session with the former, it might, by the ordinary rules of construction, be held to repeal the former *pro tanto.* But with regard to Acts passed at the same Session, we apprehend that the rules of construction are somewhat different. When they are compared together, they ought to be construed as one Act on the same subject; and the presumption of so sudden a change or revolution in the minds of the Legislature, ought not to be indulged. There ought to be an express repeal, or an absolute inconsistency between the two provisions, to authorize a Court to say that the latter had repealed the former. If both these provisions were in the same Act, both must have effect if possible. Hence the conclusion would be, that the recognizance directed to be taken with a seal, in which the bail stipulated for the principal, ought to be held as an exception to the general provision which dispensed with a seal." (3 Monroe, 80.) And thus the Court, instead of holding Acts of the same Session, apparently repugnant, the one to repeal the other, gave effect to both, although in order to do so, it became necessary to engraft the former upon, or incorporate it in the latter Act, as an exception to its provisions.

In Bacon's Abridgment it is laid down that an Act cannot be altered or repealed in the same Session in which it is passed, unless there be a clause inserted expressly reserving a power to do so. (8 Bacon, Ab. 225.) This, however, is dependent on a rule of Parliament. Mr. Sedgwick, in his treatise on Statutory and Constitutional Law, states this, and refers, in the same connection, to the 22d Section of the 3d Article of the Constitution of this State; which, it is conceived, is confirmatory of the doctrine that it will not be intended, unless the action of the Legislature has been such as to render that conclusion unavoidable, that Acts passed at the same Session repeal one another. " In the English Houses of Parliament, (says Mr. Sedgwick,) a rule prevails that no bill can be introduced in repeal of or in opposition to any law passed at the same Session. And in order to obviate this, it is there the practice to insert in every bill a clause providing that the Act may be amended or repealed at the same Session. No general rule or practice of this kind (he adds) pre-

vails in this country. But the Constitution of the State of Texas contains this clause : ' After a bill or resolution has been rejected by either branch of the Legislature, no bill or resolution embracing the same substance shall be passed into a law during the same Session.' "

The reason of this provision is, that when a subject has once been presented to the mind of the Legislature, and considered and acted on, it is to be presumed that they have acted intelligently, and according to their deliberate judgment, and that to permit their attention to be called to the same subject again, would be but a useless consumption and waste of time. Hence the framers of the Constitution thought proper to forbid it, and thus preclude the presumption, which the Court in Peyton v. Moseley say ought not to be indulged, of so sudden a change or revolution in the mind of the Legislature. The same Legislature is supposed to be actuated, in all that it does, by the same mind, spirit, and intention, and to have, at all times, the same governing objects and policy. The artificial being is supposed to have but one mind, and that a rational and intelligent mind ; and hence the cogency of the presumption, affirmed by the Constitution, that it will not change from day to day during the same Session, and undo to day what was done with so much deliberation and solemnity yesterday. It is not to be supposed, nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a Court in presuming, that it was the intention of the Legislature that their Acts passed at the same Session, should abrogate and annul one another. The decent respect due a co-ordinate department of the government, would seem to forbid that such a presumption be indulged by the Court. As we had occasion to say in Neill v. Keese, " it would not be a reasonable mode of construing Acts of the Legislature, so to construe them as to make one Act repeal another passed at the same Session. It cannot be supposed that it was their intention that Acts thus passed should abrogate and repeal one another." (5 Tex. R. 33.)

Even in respect to Acts passed at different Sessions, although it is clearly settled that statutes may be repealed by implication, when their provisions are irreconcilable, " still (says Sedgwick, p. 127,) the leaning of the Courts is against the doctrine, if it be possible to reconcile the two Acts of legislature together." So, in Pennsylvania it has been declared that one Act of Assembly is held to repeal another by implication only in cases of very

strong repugnancy, or irreconcilable inconsistency. And so in New York it is held that unless the latter statute is absolutely inconsistent with and repugnant to the former, both remain in force. So too in Massachusetts, the latter statute must be clearly repugnant to the former to effect a repeal by implication. (Id. 127–128; 6 Watts & Serg. 209; 10 Barr, 442; 21 Penn. 37; 2 Barb. S. C. R. 316; 6 Cush. 465.)

This is the well settled doctrine; and the reason of it is said to be that laws are presumed to be passed with deliberation, and with a full knowledge of all existing ones on the same subject. (Ib.) The doctrine, of course, applies with additional force of reason to the Acts of the same Session.

Treating of the rule that the statute last in point of time controls, Mr. Sedgwick says: "But it is only in cases of irreconcilable repugnancy, that this rule applies: it gives way to the fundamental principle, that the intention of the Legislature is to govern." " A subsequent statute," says Parsons, C. J., "generally will control the provisions of former statutes, which are repugnant to it according to its strict letter. But there are exceptions to this rule, depending on the construction of the last statute agreeably to the intention of the Legislature." " The general rule is conceded to be," it has been said in Pennsylvania, " that where two statutes contain repugnant provisions, the one last signed by the Governor is a repeal of one previously signed. But this is so merely because it is presumed to be so intended by the law-making power. Where the intention is otherwise, and that intention is manifest upon the face of either enactment, the plain meaning of the legislative power thus manifested, is the paramount rule of construction. It is no part of the duty of the Judiciary to resort to technical subtleties to defeat the obvious purposes of the legislative power in a matter over which that power has a constitutional right to control." (Sedgw. 415, 416.) These observations, in respect to the repealing effect of subsequent upon former enactments, have reference, of course, to cases where there is such absolute repugnancy, as that both provisions cannot stand together, and the Court is, of necessity, compelled to give effect to one as expressive of the legislative intention rather than another.

All the rules of construction must give way, as observed by Mr. Sedgwick, to the fundamental principle that the intention of the Legislature is to govern. Indeed, the design of those rules is to furnish guides to assist in arriving at the intention of the

Legislature. "The object and the only object of judicial investigation in regard to the construction of doubtful provisions of statute law, is to ascertain the intention of the Legislature which framed the statute." (Id. 231.) That intention, where it can be discovered, will prevail over the literal import of words. For "if," says Bacon, "from a view of the whole law, and from other laws in *pari materia*, the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the Legislature." (9 Bac. Ab. Statutes, (J) p. 240.)

This doctrine was applied by the Court in the case of The State v. Delesdenier, (7 Tex. R. 76, 104, 105, 106,) where it was held that the repealing clause of the Act of the 14th of December, 1837, as broad and sweeping in its terms as the repealing clauses of the Codes, did not effect a repeal of a law of a former Session, reserving certain lands from location.

It is a well settled rule in the construction of statutes, and for the purpose of arriving at the legislative intention, that all laws in *pari materia*, or on the same subject-matter, are to be taken together and examined in order to arrive at the result. (Sedg. 247.) "All acts in *pari materia*," said Lord Mansfield, "are to be taken together as if they were one law." (Ib.) There is no doctrine in relation to the construction of statutes more certainly settled than this: that all Acts in relation to the same subject-matter are to be taken in *pari materia* and considered as one Act. (Id. 247–251; 6 Indiana, 83, 354.) Whether, indeed, of the same or former Sessions, all are to be looked to to arrive at the intention of the Legislature, and more especially those of the same Session.

If we look to the other Acts of the same Session, we find that by an Act passed subsequently to the Codes the Act here in question, of the 2d of February, 1856, is directly referred to and recognized as being still in force. (Chap. 167, Sec. 1, of Acts, &c., p. 93.) This certainly places it beyond a doubt that the Legislature did not, in fact, intend, by adopting the Codes, to repeal the Act in question, whatever may have been the language employed in the Codes. The intention being thus manifest, upon no principle or rule of construction, it is conceived, can it be held that it is repealed; for it is the intention of the Legislature, constitutionally expressed, which makes the law; and having shown, by subsequent enactments, that it was not intended by

adopting the Codes to repeal the Act in question, it is perfectly clear that their adoption cannot have that effect. According to an authority before quoted, since, from other laws in *pari materia*, it thus evidently appears that the real intention was contrary to the "literal import of the terms employed to express it in a particular part of the law, that intention should prevail, for that, in fact, is the will of the Legislature." (9 Bacon, Ab. 240.) It is, moreover, manifest, notwithstanding the apparent and expressed design and object of the Codes, that the Legislature did not intend—they cannot have intended—that these should absolutely and necessarily embrace all the laws of a penal nature; for they went on immediately thereafter and continued to enact various other penal laws, prescribing the penalty for a violation of their provisions in the laws themselves, passed after the adoption of the Codes.

The Codes were designed to form a system of criminal law complete in itself. That was the theory. But it was not supposed that they were already sufficiently perfected to meet all the exigencies and wants of society; and hence other laws upon the subject were enacted from time to time, as the occasion suggested. (Acts, same Session, Ch. 155, p. 84; Ch. 164, p. 90; Ch. 174, p. 101.)

If doubt remained as to the legislative intention, we might look to the history of the legislation upon this subject; "the old law, the mischief and the remedy;" to the fact that former legislation had proved ineffectual, the Act of the 11th of February, 1854, having been decided by this Court unconstitutional; and from the large share it will be admitted to have occupied in the public and legislative mind, it would appear quite impossible that the same Legislature which had so lately, and with so much deliberation, enacted the law, could have intended its repeal, or, indeed, that they would have adopted the Codes, as they finally did, if they had supposed any such effect would be claimed for them. For it will be conceded that the enactment of a law upon the subject of the present, occupied as large a share of the public expectation, and assumed as much prominence and importance in the public and legislative mind, as any other measure of municipal law, affecting the public welfare, passed by that Legislature, the Codes not excepted. If the minds of the Legislature had really undergone so sudden a revolution, it seems impossible to doubt that they would have made it known, and removed all occasion for controversy on the subject by a direct, express repeal

of the Act, in terms. No one, I apprehend, has for a moment supposed that such really and in fact was their intention. If the law is thought to have been repealed, it must be supposed to have happened by some unaccountable oversight in adopting the Codes, without attending sufficiently to their provisions and effect; a kind of accidental repeal. But, I apprehend, laws have never been held to have been thus repealed, contrary to the legislative intention, unless, indeed, the Legislature have been so unguarded and unfortunate in the use of language to express their intention, that it is impossible to hold otherwise than that one provision does repeal another, by necessary implication, because of an irreconcilable repugnancy.

It is only necessary to advert to the history of the legislation upon this subject, to bring home to every mind the conviction, that no one has been actually misled or deceived by any action of the Legislature, as to what their intention really, and in fact, was. If any have contravened the provisions of the law, and incurred its penalty, it has been done in known disregard of the legislative will.

It is a familiar and admitted rule in the construction of statutes, which this Court has adopted and enforced, that a subsequent statute, revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former, to the extent to which its provisions are revised and supplied. And though a subsequent statute be not repugnant in its provisions to a former one, yet if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statute. (Rogers v. Watrous, 8 Tex. R. 62.) But this rule was not adopted, nor is it believed, ever to have been applied to aid in the construction of Acts passed at the same Session. It has no reference to the revising of Acts thus passed. It is not to be supposed that the mind of the Legislature will be occupied in making a revision of laws while enacting them. A revision implies the re-examination, orderly arrangement, and embodiment in a new form of the former laws, or laws in force prior to the revision.

In fine, we are not aware of any principle or precedent to warrant the Court in holding the Act in question repealed by the Codes adopted at the same Session. No case, it is believed, can be found where it has ever been held that an Act of the Legislature has been thus repealed, either by the general repealing clauses, or the provisions of other laws passed at the same Ses-

Cain v. The State.

sion, where the latter were not repugnant to the former.  Nothing short of a  direct express repeal in terms, or such irreconcilable repugnancy as that both cannot stand together, and one consequently must give place to the other and operate its repeal by implication, has, it is believed, ever been held sufficient to justify a Court in holding one Act repealed by another passed at the same Session.   As there has been no such express repeal, and no such repugnancy is perceived between the provisions of the Act in question and the Codes, or any of their provisions, we are of opinion that the Act remains in force; and consequently that the prosecution and conviction in this case were warranted by law.   The judgment, however, does not follow the verdict. That assessed a joint fine against both defendants; and it was error to adjudge and impose the entire amount of punishment, so found by the verdict against the defendants jointly, upon each severally.   The judgment must, therefore, be reversed, and such judgment be here rendered as the Court should have rendered upon the verdict.

Judgment reformed.

Roberts, J., dissenting.   Not being able to satisfy myself of the correctness of the rule of construction upon which the very able and elaborate Opinion of the majority is based, I respectfully present my separate views leading to a different conclusion; and will only say enough to develop the principles upon which they rest.

The Act making it a criminal offence to retail intoxicating liquors in quantities less than a quart was passed on the 2d day of February, 1856, to take effect on the 1st Monday of April thereafter.

The Penal Code was passed on the 28th day of August, 1856, to take effect on the first day of February, 1857; and contains no such provision as the liquor law.   The question is whether the latter repealed the former.

The Code contains a repealing clause which, after enumerating a great many criminal laws of former Sessions, concludes, "and all other laws and parts of laws relating to crimes and punishments, are hereby repealed."

The word crime, as used in the Code, signifies every grade of offence.

The liquor law then being a law then in force, and relating to crimes and punishments is literally embraced in this repeal.

This expression is unambiguous, and if it be not enforced as expressive of the legislative will, it must be upon some good reason showing that they did not mean what they have so plainly expressed.

That reason is said to be found in the rule of construction, that the liquor law, the Penal Code, and all other Acts on the subject of crime passed during the same Session, must be considered and compared together and construed as one Act.

This would cause the liquor law to be read into the Code as one of its chapters, and would of course evade the force of the repealing clause in the Code.

Before noticing the recognized limitations and restrictions on this rule, it is proper to examine the foundation and principle of the rule itself. It follows very naturally from some of the principles and practice which formerly obtained in England in the enactment of laws by Parliament. Lord Bacon says that "an Act cannot be altered or repealed in the same Session in which it passed, unless there be a clause inserted expressly reserving a power to do so." (9 Bacon, 225.)

Originally all Acts of Parliament took effect from the first day of the Session, although passed at different times, weeks and months afterwards. There was no date of approval by the King indorsed on the bill, and it could not be known which one of two Acts first received its final completion. (The King v. Justices of Middlesex, 2 Barnwell & Adolphus, 344.) Under such regulations for enacting laws as these, this rule, in their construction, was forced on the Courts as a necessity. To such an extent was this carried that in Attorney-General v. Chelsea Water-Works Company, (Fitzgibbon, 195) it was held that " when the proviso of an Act of Parliament is directly repugnant to the purview of it, the proviso shall stand and be held a repeal of the purview, as it speaks the last intention of the makers." The rule makes the incident tear down the principal. But this case illustrates that the unity of legislative will was held only because its divisibility was not entirely practicable; and so far as it was practicable the Court acted on it. In more modern times the doctrine of Lord Coke has given way before the acknowledged sovereignty of Parliament, and their right to change their will, even in the same Session, without adopting the previous precaution of reserving the power so to do; and an Act takes effect from the date of approval by the King, which is indorsed thereon. Under these changes it has been held in England that " where two Acts

Cain v. The State.

of Parliament, passed during the same Session and to come in operation the same day, are repugnant to each other, that which last received the royal assent must prevail, and be considered *pro tanto* a repeal of the other." This does not maintain, as does the case of Peyton v. Moseley, (3 Monroe, 78,) in Kentucky, that the two Acts shall be read together as one Act, and allow the repugnant part of the one to stand as an exception; but it admits the divisibility, and possibility of a change of the legislative will, and adopts as the law its last manifestation. What does the rule thus modified amount to, and in what does it differ from the ordinary and familiar rule, that two statutes relating to the same matter are to be considered and construed with reference to each other (not read as one Act, for the reason of that has passed away) and both be made to stand in force, if there be no intentional repeal, inconsistency, or repugnancy manifested? In nothing but this, that the force of the rule is increased by the greater proximity of time between the two Acts, passed at the same Session. And this is based upon the reason that "the presumption of so sudden a change or revolution in the minds of the Legislature ought not to be indulged." (Peyton v. Moseley, 3 Monroe, 78.) Or, in other words, the presumption is much stronger in favor of the unity of the legislative will, in the Acts of the same Session, than in the Acts of different Sessions. Still the Court is left free to determine whether or not there is a change of intention manifested in the separate Acts of the same Session, considering all the parts of both Acts. The mere fact, then, that these two Acts were passed at the same Session is not of itself a sufficient reason, as it is believed, for holding that the repealing clause of the Penal Code is to be totally disregarded.

Did the Legislature, by the adoption of the Penal Code, intend to repeal the liquor law; or did they do that which is irreconcilably inconsistent with its remaining in force as a law? In either event the repeal was consummated.

An examination of the subject, it is thought, will show this, both expressly and by implication. The Constitution of the State requires that "within five years after the adoption of this Constitution, the laws, civil and criminal, shall be revised, digested, arranged and published in such manner as the Legislature shall direct, and a like revision, digest and publication shall be made every ten years thereafter." By an Act of 10th February, 1854, it was provided "that it shall be the duty of the Governor, by and with the advice and consent of the Senate, to

appoint three Commissioners, whose duty it shall be to prepare a Code, amending, supplying, revising, digesting and arranging the laws, civil and criminal, of the State, to be submitted to the Legislature for their future action." This law was enacted in pursuance to the above provision of the Constitution. Most probably the words "the laws, civil and criminal, of the State," as used in the Constitution and statute, mean the written, and not the unwritten laws of the State. For this purpose, as expressed in the law, the Commissioners were appointed and entered upon their work. They did not present one Code of the laws, but three, to wit: a Penal Code, a Code of Criminal Procedure, a Code of Civil Procedure, and a volume of Revised Statutes. It was evidently the design of all these to embrace all the written laws of the State in a complete system, and that they should all together stand in the place of the Code which the Legislature had directed them to prepare.

It could not fail to attract their attention, in the performance of their duty, that the Constitution provided that "every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title." They prepared the Penal Code in the shape of a single Act, entitled "An Act to adopt and establish a Penal Code for the State of Texas." This is divided into numerous titles relating to the various branches of the criminal law. And so it was adopted by the Legislature. Its design is to comprehend the whole of the criminal law in these various titles. That is evidenced by the very effort made to comply with this provision of the Constitution as to the mode of enacting laws. For the "one object" here is "the Penal Code for the State of Texas;" that is, a system of written Penal Laws for the State. By the use of the word "Code," the idea is precluded that it was intended to adopt a part of a system. That would distort and abridge the meaning of the word.

This however is not left to presumption from the use of particular words, but is plainly expressed in the first Article of the Code itself, which reads, "Article 1. The design of enacting this Code is to define in plain language every offence against the laws of this State, and to affix to each offence its proper punishment." This does not say some, many or most, of the offences, but every offence against the laws. If we admit for a moment the hypothesis that the Legislature intended to make this Code exclusively complete within itself, at the moment of its adoption, thereby excluding every other law, written and unwritten, how

could they have expressed that intention more directly and explicitly than they have here done ?

In prescribing a rule of construction, the 9th Article reads : " This Code and every other law upon the subject of crime, that may be enacted, shall be construed according to the plain import of the language in which it is written," &c. It is hardly reasonable to infer that the Legislature intended to prescribe a rule of construction for the Code and subsequent penal laws, different from that which would apply to prior laws. We must conclude, then, that they did not contemplate that there would be any laws left in force to be construed, which were prior to the Code.

Again, in Part II. it reads as follows, to wit :—

## "TITLE I.

### DEFINITION AND DIVISION OF OFFENCES.

Art. 54. An offence is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this Code."

Here we are presented with a studied effort at accuracy and precision in giving the definition of an offence in the State of Texas, and one of the prominent and necessary elements of that definition is, that there must be a punishment prescribed in "this Code." This would necessarily exclude all penal laws in force prior to the adoption of the Code. It is no answer to this to say that the definition would equally exclude offences, subsequently made ; for the Legislature have not the power to limit or control subsequent legislation, either at the same or subsequent Sessions, as they have former legislation. So too in declaring to what persons the criminal law applies, it is provided in Title III., and Art. 36, that "No act done within the uninhabited portions of the State, by individuals belonging to the several Indian tribes, in their intercourse with each other or with other tribes, and affecting no other person, is considered as an offence against this Code," &c.

To finish fully the exclusive completeness of this Code, as the system of penal laws for the State, the Section next to the last reads: "Section 2. The following Acts and parts of Acts, to wit:" (here fifty Acts and parts of Acts are enumerated) "together with all other laws and parts of laws relating to crimes and punishments, are hereby repealed."

If then the Legislature intended that this Code should be a complete system of penal laws within itself, they could not have

24

intended otherwise than that any previous enactment, not embraced in it, should not be a penal law.

It may be presented in another point of view equally favorable to its repeal, not expressly, but by implication.

It is well established upon authority, that " a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former." And this is the case, too, when distinct provisions of the former Act are omitted in the latter. (Bartlett and Others v. King, 12 Mass. 537 ; Sedgwick on Con. & Stat. Law, 126.)

If the correct view of the scope and object of the Code has been taken, it certainly is a revision of the entire penal laws of the State ; and there are various considerations indicating that it was intended to be a substitute for all former penal laws. For years past, prior to the adoption of the Code, Acts of the Legislature have been passed, amended, and changed with reference to the Common Law, as the fundamental basis of our system of penal laws. And this process continued during the Session which adopted the Code down to the time of its adoption, and even afterwards by inadvertence as may be supposed. Not a single Act, passed that Session, either at the first part of it or at the adjourned Session as it is called, makes the least reference directly or indirectly to the Penal Code, except alone the Code of Criminal Procedure. Even the Acts relating to crimes, which were approved after the approval of the Code, make no reference to it, but on the contrary make reference, either by the enacting or repealing clause, to the former Acts. For instance, on the 1st September, 1856, two days after the approval of the Code, an Act was approved concerning public weighers of cotton, and making a penal offence relating thereto ; when the Code had made the same thing, substantially, a penal offence ; but there is such a difference in the language as to rebut the idea that one was passed with any reference to the other. (Code, Art. 469 ; Acts, 90.) On the same day an Act was approved prohibiting the sale of liquor in Jamestown and Starrville, and imposing the penalty prescribed in the liquor law of 2d February, 1856. From which it may be inferred that the Legislature regarded the latter Act still in force. But this will not hold good ; for on the 30th August, 1856, after the approval of the Code, an Act is approved preventing slaves from carrying guns, &c., and the

same Act repeals the sixth Section of the Act of 1840, which had been expressly enumerated and repealed by the repealing clause of the Code. The same day the liquor law was passed, 2d February, 1856, another Act was passed, making it a penal offence to forge, alter, &c., any instrument to get a patent, &c. The latter is substantially inserted in the Code, and the former is entirely omitted. The liquor law, although it was introduced into the Legislature after the Code was, as it is stated by the Attorney-General, still it makes no reference thereto, but on the contrary repeals the Act of 1854. Thus it is obvious that the Legislature had in view the amendment of the old system, in the passage of these various Acts, except the two Criminal Codes ; they constituting a new system, that might or might not be adopted. The minds of the legislators were necessarily led to regard the old and the new systems in contrast, as to which of the two should be the future rule. Both were being perfected at the same time, not in harmony, but in antagonism ; not for joining them together in unison, but for adopting one and rejecting the other.

Two bodies cannot occupy the same space at the same time ; so the Code being adopted, became a substitute for the Common Law and all its perfecting and amending statutes, which were passed prior to the Code ; and the liquor law of 2d February, 1856, being one of them, was repealed by the Code. Those passed after the Code must stand, though not in harmony with it, because they are the last expression of legislative will, and cannot therefore be disregarded, by force of what is intended in the Code, which is as to them the anterior law.

If it be said on the one side, that there is no precedent for this, it may be answered on the other, that there is perhaps no similar case to be found, where a criminal code has been adopted, assuming to embrace all the law on the subject. And therefore the question must be resolved on principle.

Penal laws should not only be plain, but they should be plainly not repealed when they are enforced ; especially if they belong to the class of offences *mala prohibita*.

Other considerations might be presented, conducing to the conclusion here arrived at, but sufficient has been said to develop the basis of the opinion.