## Ex Parte Schmidt.

1. The Taxing Power.—The Constitution of Texas prescribes limits to the power of the legislature over the subjects and rates of taxation. It is essential that taxing functionaries be able to show authority for taxation. they assume to impose.

2. City Occupation Tax.—The general tax law of 1876 imposes on fire and marine insurance companies a state occupation tax of $200, and a county

occupation tax of $5. At the same session of the legislature the charter of the city of Houston was amended, and that municipality empowered to assess, license, and tax certain occupations, and "such other trades and occupations as may be taxed by the laws of this state;" and the city ordained an occupation tax of $75 on every fire and marine insurance company. *Held,* 1st, that the city ordinance was valid; 2d, that a fire and marine insurance company which transacted its business within the city limits was subject to the tax, though it was domiciled elsewhere, and had paid all state and county occupation taxes; 3d, that the local agent of such company might, by the city ordinances, be made amenable by fine in the city courts for the non-payment of the tax, and be detained in custody until payment of the fine, if so adjudged.

:3. MUNICIPAL TAXATION.—So long as a municipality keeps within its lawful power to tax, the courts are not authorized to restrain its exercise of that power on the ground that the municipal tax may operate a local prohibition of a lawful pursuit.

*Habeas corpus* before the Court of Appeals.

The opinion fully discloses the case, and also indicates the arguments forcibly presented by counsel for the relator.

*E. P. Hill,* for the relator.

*John H. Duncan, contra,* cited: Dill. on Mun. Corp., secs. 54, 291, 590, and notes; *Wilkinson* v. *City of Charleston,* 2 S. C. Law Rep. 527; *City of St. Louis* v. *Grove,* 46 Mo. 574.

ECTOR, P. J.   The applicant, F. A. Schmidt, was tried and convicted in three cases, March 31, 1877, in the recorder's court of the city of Houston, in Harris county, for the offense of pursuing the occupation of agent of the Union Marine and Fire Insurance Company, of Galveston, within the limits of the city of Houston, without paying the annual occupation tax of $75, as required by an ordinance of the city of Houston prescribing the taxes and licenses to be assessed and collected for the year 1877, passed December 15, 1876; and he was sentenced to pay a fine of $50 and costs of court in each case, and warrants of com-

mitment were issued to the city marshal of the city of Houston reciting the foregoing facts, and commanding said city marshal to receive and place the applicant in the city jail of Houston until said fines and costs were paid.

It is agreed between the counsel on both sides that the printed copy of the ordinance of the city of Houston, attached to the petition for the writ of *habeas corpus*, viz.,. "An ordinance passed December 15, 1876, prescribing the taxes and licenses to be assessed and collected for the year 1877," etc., be received and considered by the court, in evidence, as a true copy of said ordinance. The charter of the city of Houston is declared by its terms to be "a public act," and is found in the Special Laws of 1874, p. 4; and the amendments to the charter in the Special Laws of 1876, p. 43.

It is essential that the legislature should keep within its proper sphere of action in imposing taxes. In this state it. has not been left an entirely discretionary power as to the subjects and amount of taxation. In other words, the power to determine the persons and objects to be taxed is. not trusted, as in most of the states of the American Union,. exclusively to the legislative department, but certain limits. have been prescribed to it by the Constitution.

It is essential to valid taxation that the taxing officers be able to show authority for the taxes they assume to impose, in every instance. Taxes are appropriations made by the people to the state, and to the county and municipal corpo-. rations, to be expended in furnishing the proper protection,. security, and such facilities for enjoyment as properly pertain to government to provide; and, while it is the duty of every good citizen to bear this portion of the burdens of the government, and to pay all his lawful taxes, it has ever been held as a chief corner-stone of Anglo-Saxon liberty that the taxing power keep within its proper limits, and be able to show legal authority for every levy of taxes.

Article 8, section 1, of the Constitution of this state provides : "Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations other than municipal shall be ascertained as may be provided by law. The legislature may impose a poll tax. It may also impose occupation taxes both upon natural persons and upon corporations other than municipal, doing any business in this state. It may also tax incomes of both natural persons and corporations other than municipal, except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax ; provided, that two hundred and fifty dollars' worth of household and kitchen furniture, belonging to each family in the state, shall be exempt from taxation ; and provided, further, that the occupation tax levied by any city or town, for any year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the state for the same period on such profession or business."

The 5th section of the 11th Article of the Constitution reads as follows : "Sec. 5. Cities having more than ten thousand inhabitants may have their charters granted or amended by special act of the legislature, and may levy and assess such taxes as may be authorized by law," etc.

The first legislature which assembled after the adoption of the Constitution, by an act approved August 4, 1876 (Special Laws Fifteenth Legislature, 43–49), amended certain sections of the law incorporating the city of Houston, in Harris county. Section 9 of this special act provides that "section thirty-one shall hereafter read as follows : 'Sec. 31. That the city council, by a vote of the majority of the whole number of aldermen, taken by yeas and nays and entered upon the journal, shall have power to assess, license, and tax hawkers, peddlers, auctioneers, theatrical and other exhibitions, shows, and amusements, billiard tables,

nine and ten-pin alleys, public drays, wagons, omnibuses, and carriages, grog-shops, tippling-houses, and dram-shops, beer-saloons (whether for the sale of domestic beers and liquors or otherwise), and such other trades and occupations not especially mentioned herein as may be taxed by the laws of the state; but no assessment or license-tax levied under this section shall exceed one-half the amount levied by the state for the same period on such profession or business.'"

At the same session the legislature passed a general act entitled "An act to regulate taxation and affix the rate of the same." The 3d section of this last act is as follows: "Sec. 3. That there shall be levied on and collected from every person, firm, company, or association of persons, pursuing any of the following named occupations, an annual tax (except when herein otherwise provided) on every occupation or separate establishment, as follows:" * * * "From every life insurance company doing business in this state an annual tax of two hundred dollars, and in every county in which they may do business ten dollars as county taxes; from every fire and marine insurance company doing business in this state an annual tax of two hundred dollars, and in every county in which they may do business five dollars as county taxes. The state tax due from insurance companies shall be paid by the company to the comptroller of public accounts, whose receipt under seal shall be issued to the company, certified copies of which shall be evidence of payment of state tax, and the county collector's receipt shall be authority to work in any county in this state for which said company has a receipt."

Section 4 of the same act, amongst other things, provides "that any one wishing to pursue any of the vocations named in this act, for a less period than one year, may do so by paying a *pro-rata* amount of such occupation tax for the period he may desire; provided, further, that no such

occupation license shall issue for a less period than three months;" * * * "and.provided, further, that the tax herein authorized to be levied by the county commissioners' courts shall not be construed to authorize said courts to levy a higher rate of tax than ten dollars on life insurance companies and five dollars on fire and marine insurance companies."

The city of Houston passed certain ordinances on December 15, 1876, prescribing the taxes and licenses to be assessed and collected for the year 1877, one of which is as follows:

Art. 580, sec. 4. "That there shall be levied on and collected from every person, firm, company, or association of persons, pursuing any of the following named occupations, an annual tax (except when herein otherwise provided) on every such occupation or separate establishment, as follows: * * * "From every fire and marine insurance company seventy-five dollars."

The counsel for the petitioner insists that the insurance company, having paid the state occupation tax of $200, and the county tax of $5 in every county in which they do business, as required by section 3 of the "Act to regulate taxation," etc. (General Laws of 1876, 245), have authority to work in any county in this state where they have paid such tax, and cannot be required to pay any further occupation tax in each town or city; that it was the plain intent that payment of the state and county occupation tax should be authority to work in any county in the state; that the legislature might very properly have imposed an occupation tax on insurance agencies and agents, but, not having done so, the city of Houston has no power to do so, and has not attempted it; and that, therefore, his client is illegally restrained of his liberty.

Section 9 of the Special Laws of 1876, which we have already given, we believe did confer the power on the city

council of the city of Houston to assess an occupation tax on all marine and fire insurance companies. doing business in said city, not to exceed one-half the amount levied by the state for the same period. The city council of the city of Houston, as we have also shown, after the passage of said special law, levied an occupation tax of $75, for the year 1877, on every fire and marine insurance company doing business in the city of Houston.

These laws to which we have referred were both passed during the same session of the legislature, and both are in harmony with the Constitution. The general tax law did not take effect until ninety days after the adjournment of the legislature. Unless the general tax law repealed section 9 of the special law, they are both in force.

It is a well-settled rule of construction of statutes, and for the arriving at the legislative intention, that all laws *in pari materia*, or on the same subject-matter, are to be taken together in order to arrive at the result. Sedgw. 247. " All acts *in pari materia*," said Lord Mansfield, " are to be taken together as if they were one law." Sedgw. 247.

Our supreme court say that " the same legislature is supposed to be actuated, in all that it does, by the same mind, and to have at all times had the same objects and policy, and that it will not change its mind from day to day during the same session ; and nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction will justify a court in presuming that it was the intention of the legislature that their acts passed at the same session should abrogate and annul one another. The decent respect due a coördinate department of the government would seem to forbid that such a presumption be indulged by the courts." *Cain* v. *The State*, 20 Texas, 360.

If the maximum occupation tax which the legislature has authorized the city council of Houston to levy on such insurance companies should amount to a prohibition, the

city council would, doubtless, lower the assessment. It would be to the interest of the city to do so. While the municipal corporation of a city or town keeps within the limits prescribed by the Constitution and laws, in the assessment of taxes of any kind, the judiciary would not be authorized to interfere.

In this case F. A. Schmidt, the applicant, resides in the city of Houston. It is not denied that he does the business of the Marine and Fire Insurance Company of Galveston, in the city of Houston; that he does the substantial and profitable work of said insurance company of Galveston in the municipality of Houston. By taking the provisions of the Constitution, the different sections of the general and special laws, and the ordinances which we have copied herein, we believe it is a fair interpretation of them to hold that the applicant, Schmidt—call him person, agent, or what we will—is liable for this city occupation tax for pursuing the business of the Marine and Fire Insurance Company of Galveston, in the city of Houston, and that, if delinquent, he is liable to punishment under the ordinances of the city therefor. If not, how easy would it be for all foreign insurance companies doing business in this state through agents who own their office furniture to evade the payment of taxes. This court, having examined the return and all documents attached, and heard the testimony on both sides, and finding no error in the lower court, do remand the said applicant into the custody of the said marshal of the city of Houston.

*Ordered accordingly.*