**FORTINBERRY v. STATE ex rel. MYERS.**
(No. 637–4499.) *

(Commission of Appeals of Texas, Section B. April 7, 1926.)

1. **Statutes ⚖⇒158.**
   Repeals by implication are never favored.

2. **Statutes ⚖⇒159.**
   When later act is silent as to older one, continued operation of older is presumed intended, unless there is such contradiction that both cannot stand, and purpose to repeal is manifest.

3. **Statutes ⚖⇒159—Where two statutes seem repugnant, construction harmonizing them and leaving both in concurrent operation will be sought.**
   Where two statutes seem repugnant, construction harmonizing them and leaving both in concurrent operation will be sought, especially where older law is particular and in negative terms, and later statute is general.

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied June 26, 1926.

**4. Statutes ⬅181(1).**

In construing statutes, intention of Legislature is paramount consideration.

**5. Statutes ⬅225.**

Generally, subsequent statute will control provisions of former statutes which are repugnant to its strict letter.

**6. Constitutional law ⬅70(1).**

Courts should not resort to technical subtleties to defeat obvious purposes of legislative power in matter over which Legislature has constitutional right to control.

**7. Evidence ⬅33.**

Courts may take judicial notice of the history of legislation embodied in a statute.

**8. Municipal corporations ⬅124(3)—Rev. St. 1925, art. 987, requiring residence as qualification to hold office of mayor, held not repealed by article 2927.**

Rev. St. 1925, art. 987, requiring year's residence as qualification to hold office of town mayor, *held* not repealed by article 2927, enacted subsequently and setting forth in general terms residential qualifications for officers of state, county, precinct, or municipality.

Error to Court of Civil Appeals of First Supreme Judicial District.

Quo warranto by the State, on the relation of C. R. Myers, against C. I. Fortinberry to determine the right to the office of mayor in the city of Goose Creek. Judgment for defendant was reversed and rendered for relator by the Court of Civil Appeals (276 S. W. 466), and defendant brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Robt. L. Robertson, of Goose Creek, and Morris Sewell & Morris, Ross & Wood, and R. Wayne Lawler, all of Houston, for plaintiff in error.

Mark M. Carter, of Goose Creek, Stevens & Stevens, of Houston, and P. F. Dominy, of San Bento (C. L. Dutton, of Houston, of counsel), for defendant in error.

SHORT, J. This is a quo warranto proceeding in the name of the state, upon the relation of C. R. Myers, to oust the plaintiff in error, C. I. Fortinberry, from the office of mayor of the town of Goose Creek in Harris county, Tex.; the facts being that C. R. Myers, at an election held on April 7, 1925, for mayor, received a majority of the votes cast for said office after having resided within the limits of the town only seven and one-half months immediately preceding the election. But, on account of the admitted fact that Myers had not resided within the limits of the town at least 12 months preceding the election, the plaintiff in error, Fortinberry, then in office as mayor, claimed for himself the right to hold over until such time as his legally eligible successor should have been duly elected and qualified. The proceeding commenced in the district court resulted in a judgment in favor of the plaintiff in error, but, upon appeal to the Court of Civil Appeals of the First Supreme Judicial District, that judgment was reversed, and, a motion for rehearing having been overruled, the plaintiff in error successfully prosecuted a writ of error to the Supreme Court, and the matter has been referred to this section of the Commission of Appeals for disposition. The Court of Civil Appeals found as a fact that the town of Goose Creek, Tex., was duly incorporated, and, as such corporation, was operating under chapters 1 to 13, inclusive, of title 22, of the Revised Statutes of 1911 as amended (Vernon's Ann. Civ. St. Supp. 1922), and under the commission form of government. The legal question involved under the undisputed fact is: Was article 792, Vernon's Sayles' Civil Statutes of Tex. as 1914, passed by the Legislature in 1875, repealed by article 3082, as amended by the Legislature in 1919 (Acts 36th Legislature, p. 17 [Vernon's Ann. Civ. St. Supp. 1922, art. 3082])? If said article 792 has been so repealed, the Court of Civil Appeals holding that it was, then the judgment of that court should be affirmed; otherwise the judgment of the district court should be.

The two articles in question are set out below, together with their title and chapter headings as found in the Compiled Statutes of 1920:

| Title 22. Cities and Towns. | Title 49. Elections. |
|---|---|
| Chapter 2. Officers and Their Election. | Chapter 9. Miscellaneous Provisions. |
| Art. 792. Who are Eligible to the Office of Mayor and Alderman. | Art. 3082. Persons not Eligible to Hold Office. |
| No person shall be eligible to the office of mayor unless he possesses the qualifications of an elector, and shall have resided twelve months next preceding the election within the limits of the city. * * * | No person shall be eligible to any state, county, precinct or municipal office in the state of Texas unless he shall be eligible to hold office under the Constitution of this state, and unless he shall have resided in this state for the period of twelve months and six months in the county, precinct, or municipality, in which he offers himself as a candidate next preceding any general or special election and shall have been an actual bona fide citizen of said county, precinct, or municipality for more than six months. * * * |

The Revised Civil Statutes of the state of Texas, adopted at the regular session of the Thirty-Second Legislature in 1911 under title 22, with amendments (Vernon's Ann. Civ. St. Supp. 1922), embraces 18 chapters, beginning with article 762 and ending with article 1096½. Chapter 1 embraces general provisions relating to cities containing one

thousand inhabitants or over. Chapter 2 relates to officers and their election, and in this chapter is found article 792, declaring that no person shall be eligible to the office of mayor unless he shall have resided 12 months next preceding the election within the limits of the city. Chapter 3 relates to the duties and powers of officers. Chapter 4 relates to the general powers and duties of the city council. Chapter 5 relates to corporation courts. Chapter 6 relates to taxation. Chapter 7 relates to the assessment and collection of taxes. Chapter 8 relates to the fire department. Chapter 9 relates to the sanitary department. Chapter 10 relates to streets and alleys. Chapter 11 relates to street improvements. Chapter 12 relates to public utility corporations, rates and charges, regulation by council, etc. Chapter 13 relates to public corporations, rates and charges, regulation by court. Under the findings of fact by the Court of Civil Appeals, the town of Goose Creek was operating under these chapters of this title, the provisions of which are set forth in articles 762 to 1032, inclusive; and, beginning with article 1033, and ending with article 1069, chapter 14 relates to towns and villages containing more than 500, and less than 10,000 inhabitants. It will be noted that, under chapter 1 of title 22, the method provided for the acceptance of the provisions of this title, relating to cities and towns duly incorporated, whereby they may accept the provisions of this title, is by a two-thirds vote of the council thereof duly taken and entered of record as provided by article 762; while towns and villages under the provisions of chapter 14 are authorized to incorporate by filing an application for that purpose in the office of the judge of the county court of the county in which the town or village is situated, accompanied by a plat of the proposed town or village, when the county judge is required to order an election to be held for the purpose of submitting the question to a vote of the people. In this election it is provided by article 1038 that every male person who has attained the age of 21 years, and who has resided within the limits of the proposed town for the 6 months next preceding, and is a qualified elector under the laws of the state, shall be entitled to vote at the election; and it is also provided that, if said election shall be in favor of the incorporation of the territory, the county judge shall immediately order an election for a mayor, town marshal, and five aldermen; and article 1044 provides that no person shall be eligible to any of said offices, nor shall any person be qualified to vote at any election to fill any of them, unless he possesses the requisities provided by article 1038. Chapters 15, 16, 17, and 18 relate to matters not involved in the question under discussion.

Title 49 of the same statutes as amended

(Vernon's Ann. Civ. St. Supp. 1922), relates to elections, and the provisions are embraced in 11 chapters, beginning with article 2910, and ending with article 3175a. Chapter 1 of this title relates to the time and place of holding elections. Chapter 2 relates to officers of election. Chapter 3 relates to ordering elections. Chapter 4 relates to suffrage. Chapter 5 relates to the official ballot. Chapter 6 relates to the supplies, arrangements, and expense of election. Chapter 7 relates to the manner of conducting elections and making returns thereof. Chapter 8 relates to contested elections. Chapter 9 relates to miscellaneous provisions, and under this chapter is to be found article 3082 above quoted, by virtue of the provisions of which the defendant in error Myers claims the authority to hold the office of mayor of Goose Creek, which article provides a residence in the state for a period of 12 months, and in the county, precinct, or municipality for 6 months, as a prerequisite to the holding of any state, county, precinct, or municipal office, and from which it will be seen that, unless article 792 has been repealed by virtue of the language of article 3082, under the findings of fact by the Court of Civil Appeals that the town of Goose Creek was operating under the provisions of title 22, chapters 1 to 13, among which provisions is article 792 above quoted, the defendant in error Myers was not qualified to hold said office of mayor of said town.

[1-3] Repeals by implication are never favored, and, when a later act is silent as to an older one, the presumption is that the continued operation of the older statute was intended, unless there is some contradiction that the purpose to repeal is manifest, but such a contradiction must be so pronounced that both cannot stand. Where two statutes seem to be repugnant, a construction will be sought to harmonize them and leave both in concurrent operation, if it is possible fairly to reconcile them, especially where the older law is particular, and is expressed in negative terms, and the later statute is general. Cole v. Cobolini, 170 S. W. 1036, 106 Tex. 472; Cain v. State, 20 Tex. 355; 1 Lewis' Sutherland, Stat. Cons. par. 247; Hanrick v. Hanrick, 54 Tex. 101; Brown v. Chancellor, 61 Tex. 437; Herndon v. Reed, 18 S. W. 665, 82 Tex. 647; Wilmot v. Mudge, 103 U. S. 217, 26 L. Ed. 536; Frost v. Wenie, 15 S. Ct. 532, 157 U. S. 46, 39 L. Ed. 614.

[4-8] In disposing of this question we are discussing, the fundamental principle involved is that the intention of the Legislature which enacted both provisions is to govern. It is true that a subsequent statute generally will control the provisions of former statutes which are repugnant to it according to its strict letter. Still, there are exceptions to this rule, depending on the construction of the last statute agreeably to the intention of the Legislature. This rule is founded in the

reason that, where two statutes contain repugnant provisions, the last one is a repeal of the previous one merely because it is presumed to be so intended by the lawmaking power, but, where the intention is otherwise, and that intention is manifest upon the face of either enactment, the plain meaning of the legislative power thus manifested is the paramount rule of construction. It is no part of the duty of the judiciary to resort to technical subtleties to defeat the obvious purposes of the legislative power in a matter over which that power has a constitutional right to control. Cain v. State, 20 Tex. 361. The object of judicial investigation in regard to the construction of doubtful provisions of statute law is to ascertain the intention of the Legislature which framed the statutes. Article 792 was enacted by the Legislature in dealing with the organization of communities into villages and towns and cities. Article 3082 was enacted by the Legislature in dealing with a much more general subject, to wit, that of declaring the qualifications of individuals other than those named in the Constitution to hold any office of honor, trust, or emolument provided by the laws of the state, whether state, county, precinct, or municipal. In other words, article 792 was negative in its terms and special in its application, while article 3082 was general in its terms, and deals with a general situation. In Cole v. State, upon the relation of Cobolini, the Supreme Court of Texas, speaking through Justice Phillips, uses this language:

"Repeals by implication are never favored. Laws are enacted with a view to their permanence, and it is to be supposed that a purpose on the part of the lawmaking body to abrogate them will be given unequivocal expression. Knowledge of an existing law relating to the same subject is likewise attributed to the Legislature in the enactment of the subsequent statute; and when the later act is silent as to the older law, the presumption is that its continued operation was intended, unless they present a contradiction so positive that the purpose to repeal is manifest. To avoid a state of conflict an implied repeal results where two acts are in such opposition. But the antagonism must be absolute—so pronounced that both cannot stand.

"Though they may seem to be repugnant, if it is possible to fairly reconcile them, such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them. If the later statute reasonably admits of a construction which will allow effect to the older law and still leave an ample field for its own operation, a total repugnance cannot be said to exist, and, therefore, an implied repeal does not result, since in such case both may stand and perform a distinct office. Especially will this construction be adopted where the older law is particular and expressed in negative terms, and the later statute is general in its nature. In such instances that to which the older law distinctly applied its negative provisions, will be regarded as excepted from the operation of the more general statute. These are but the familiar rules of construction to be applied where the implied repeal of a law is involved."

In that case the question was whether article 1521, as amended (Acts 33d Leg. [1913] c. 55 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1521]), dealing with the jurisdiction of the Supreme Court, was in conflict with article 1591, dealing with what judgments of the Court of Civil Appeals were conclusive, and in that case the later general statute contained the affirmative provision, "in which case the Supreme Court shall take jurisdiction," etc., while in the case at bar the provision of the general later statute not only contains no such affirmative provision, but contains instead a mere negative "unless." In that case the Supreme Court says it is not sufficient that there be a discrepancy between different parts of a system of legislation upon the same general subject, but that there must be some irreconcilable conflict upon the statutes in question upon the same specific subject. The Supreme Court also in the Cole Case points out that the article which was claimed to be repealed was contained in a different title from that of the article claimed to effect the repeal, stating that they constituted distinct subjects of legislation, and that the subsequent act must be regarded as having been proposed and passed under that recognition; and it will be noted, not only that article 3082 has reference to a different part of a system of legislation, but is under a different title from that of article 792, but, in addition thereto, it will be noted that article 3082 is restrictive in its terms, and merely says that no person shall hold these offices, unless such person shall at least have been a resident of the state for such a length of time, and of the county, precinct, or municipality for such a length of time. Even if the two statutes should be held to relate to the same subject, it will be seen that an absolute and total conflict between them is not disclosed; and we again quote from the Cole Case in support of the proposition which we believe to be supported by the authorities generally that, even if article 3082 had been intended by the Legislature to have reference to the same subject to which article 792 relates, the latter article can be regarded as an exception to the general rule announced in article 3082. Judge Phillips says in the Cole Case:

"It [the article claimed to be repealed] is a particular statute, and is expressed in negative terms [as is article 792]. * * * This is a very clear and emphatic declaration. * * * Having regard for its character as an exemption provision, it would seem to necessarily provide an exception to a revision of that jurisdiction which is silent as to it and is expressed in such general terms as to include, if taken literally, all classes of cases. * * * No vio-

lence is done its language by restraining its operation to cases not by law declared exempt from the jurisdiction of the Supreme Court. With one statute negative in character, and relating to particular classes of cases over which a certain jurisdiction is directly denied, and another statute, affirmative, and defining that jurisdiction in general terms, no doubt can be indulged as to the construction to be applied. In such a case the question of an implied repeal of the particular statute is not to be seriously considered. It will be construed as constituting an exception to the general statute, under the settled rule, though the language of the latter is, literally, broad enough to include that to which its negative provisions apply. In this manner both statutes will be given effect and each allowed its appropriate field of operation."

In the case of St. Louis B. & M. Ry. Co. v. Marcovich, 221 S. W. 582, the Commission of Appeals quoted with approval from the Cole case in support of substantially the same proposition we are discussing. Both the Cole and Marcovich Cases furnish a close analogy to the elements involved in the questions presented in the case at bar; and we think the decision of the question under discussion could be rested exclusively, upon these two cases and the authorities cited therein. It is our opinion, in view of the history of the legislation embodied in article 3082, of which the courts are entitled to take judicial notice, that the Legislature intended by the act of 1895 (Acts 24th Leg. c. 56), as well as by the act of 1919, included in the Revised Statutes as article 3082, not to create or enlarge rights and privileges, but to restrict, limit, and qualify rights already existing. The language employed by the act of 1895, which was the original act, meant, in our opinion, that "hereafter not every citizen shall be eligible to hold office, as has heretofore been the case, but only such persons as shall have resided in the state and county for the length of time herein prescribed shall be eligible; that no person shall be eligible to any county or state office in the state of Texas if it be not a fact that he has resided in the state and county for at least the length of time herein prescribed," and, further, that the language employed by the amendment to the original act meant the same thing with reference to the eligibility of persons to hold a precinct or municipal office. Cain v. State, 20 Tex. 355; State v. Covington, 29 Ohio St. 102; Darrow v. People, 8 P. 661, 8 Colo.

417; State v. McAllister, 18 S. E. 770, 38 W. Va. 485, 24 L. R. A. 343.

While not conclusive, yet the fact is persuasive in support of the proposition that it was not the intention of the Legislature by enacting article 3082 to repeal article 792. We find both articles embraced in the recent enactment of the Revised Statutes of Texas 1925, by the Thirty-Ninth Legislature, which Act is entitled:.

"A Bill to be Entitled 'An Act to Adopt and Establish the 'Revised Civil Statutes of the State of Texas.'

"Whereas, it is expedient that the General Civil Statutes of this state should be arranged in appropriate titles, chapters and articles, and that the whole should, as far as practicable, be made concise, clear and consistent; therefore,

"Section 1. Be it enacted by the Legislature of the state of Texas:

"That the following titles, chapters, subdivisions and articles shall hereafter constitute the Revised Civil Statutes of Texas,"

—and concluding, in so far as the same relates to the matter under discussion, with the following language:

"Be it further enacted: Sec. 2. Repealing clause.—That all civil statutes of a general nature, in force when the Revised Statutes take effect, and which are not included herein, or which are not hereby expressly continued in force, are hereby repealed. Sec. 22. * * * That these Revised Statutes when adopted shall be construed to be an act of the Legislature. No law herein shall be held to be void because its caption, when enacted, was in any way defective."

Article 3082 of the Revised Civil Statutes of 1911 is article 2927 of the Revised Civil Statutes of 1925, and article 792 of the Revised Statutes of 1911 is article 987 of the Revised Statutes of 1925.

Believing that it was not the intention of the Legislature by enacting article 3082 to repeal article 792 of the Revised Statutes of 1911, and further believing that these articles can be reconciled, and are, therefore, not totally repugnant, we conclude that it is our duty to recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed, and we accordingly do so.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.