## W. L. CHILES *v.* THE STATE.

1. TRANSCRIPT—OMISSIONS, HOW SUPPLIED.—The writ of *certiorari* or consent of parties litigant are the only modes by which any omissions from transcripts can be supplied.

2. STATUTES OF SAME SESSION—REPUGNANCY.—Of two acts enacted at the same session of the legislature, and relating to the same subject-matter, but repugnant to each other, the later act must prevail.

3. GAMING.—Betting is not of itself an offense against the Penal Code of this state. It is the betting at those games, tables, or banks which are prohibited by law which constitutes an indictable offense.

4. SAME—TEN-PIN ALLEYS.—Since the passage of the act of June 3, 1873, whereby a license tax was imposed on nine and ten-pin alleys, the betting upon the ordinary games played thereon has not been an offense known to the laws of this state, notwithstanding the prohibition of such alleys by a prior act of the same session.

5. LEGISLATIVE INTENT.—It is not to be supposed that the legislature intended to punish criminally any of the sources from which the revenues are derived.

APPEAL from the District Court of Milam.   Tried below before the Hon. A. S. BROADDUS.

No brief for the appellant.

*H. H. Boone*, Attorney General, for the State.

WINKLER, J.   The appellant, W. L. Chiles, was tried and convicted in the district court of Milam county on an indictment which charges that, on a certain day named, the accused " did then and there unlawfully bet at a certain ten-pin alley, then and there being kept and exhibited for the purpose of gaming and obtaining bets thereon, contrary," etc.

The bill of indictment was presented to the January term, 1875. The defendant's motion for a new trial, after alleging, among other things, that the verdict is contrary to the law and to the evidence, raises the only question necessary to be considered, namely: does the indictment charge an offense known to the law?

Before proceeding, however, with the consideration of the case proper, we desire to notice two irregularities apparent in the record before us. One is that the transcript comes up in two parcels and at different times. The main transcript, containing the proceedings on the trial and antecedent thereto, was filed in the supreme court, June 25, 1875; whilst another portion, containing an assignment of

errors which had not been furnished the clerk, as he states,. at the time the original transcript was prepared and sent, up, was not filed until September 6, 1875.

If any part of the proceedings necessary to be embraced in the transcript be omitted, the omission could only be supplied either by consent or by regular motion suggesting the omission, and giving a description of it, so that it could. be brought up on *certiorari.*

The other irregularity is an attempt, by consent, to give effect to an agreement that a part of the proceedings in another case be given the same force and effect in this case it was intended to have in the other. The agreement is to the effect that all defensive pleadings in the case of *The State* v. *Poley Reed* be considered as filed in this cause, with the same force and effect in this case as in the other. A better practice would be to embody in the record, before appeal, that it might be embraced in the transcript, that portion of the record of the other case sought to be used in the case to which it is intended to apply.

In this case neither the assignment of errors nor the defensive pleadings in the case of Poley Reed are very material. As to the defensive pleadings alluded to, they have been disposed of in this court in the Poley Reed case, decided at, the present term, against the views presented by the pleader.

To return to the case on trial. Does the indictment charge the accused with an indictable offense? In other words, is it, a violation of any provision of the penal laws to bet at the game of ten-pins, on a ten-pin alley kept and exhibited for gaming?

In a case in which the indictment charged the accused with unlawfully keeping and exhibiting a certain gaming device called ten-pins, on which money was bet, it was held that the offense charged was not indictable. 41 Texas, 138.. In a case decided under the law in force prior to the passage of the act of the 9th of April, 1873, it was held that, while.

unquestionably it is the purpose of the law to punish the keeping or exhibiting, for the purpose of gaming, all gaming tables or banks of any name or description, or, if used for gaming, whether they have any name or not, and that every species of gaming device known by the name of tables or banks, and any and all games which in common language are said to be kept, dealt, or exhibited, are prohibited, it is equally evident that it was not the purpose of the law to forbid or punish the exhibiting of tables or the playing of games which were expressly licensed.

Betting itself is not a violation of the Code. It is betting at games or on tables or banks which are prohibited that constitutes the offense of gaming which the law seeks to suppress. So, likewise, it is not the keeping or exhibiting of a game licensed and permitted by law which comes under the penalty attached to the keeping of a gaming table, kept or exhibited for the purpose of gaming, although wagers may be laid upon the games played upon such licensed table. *Houghton* v. *The State,* 41 Texas, 138.

In order to see the applicability of the rulings in the case above referred to, as a guide in determining this, it would be well to inquire what changes were made by the act of April 9, 1873, to the law in force prior to that time.

By the act of May 11, 1871, which was an amendment of Articles 412 and 418 of the Penal Code, Paschal's Digest, Articles 2047 and 2054, it was made a violation of law for any person to keep or exhibit, for the purpose of gaming, any gaming table or bank of any name or description whatever, or any table or bank, used for gaming, which has no name, or to be in any manner interested in keeping or exhibiting such table or bank, such as are enumerated in the six preceding Articles, evidently alluding to the six Articles of the Penal Code next preceding the substituted Article 418. See 2 Pasc. Dig., Arts. 6523, 6524.

Inasmuch as the act of May 11, 1871, repealed a former

act of the 16th of December, 1863, which has been incorporated into Paschal's Digest, it will be necessary to look to the Penal Code, as originally adopted, in order to see precisely the application of the term "six preceding Articles" referred to, and to determine what the law on the subject was prior to the passage of the act of April 9, 1873, which, it should be observed, itself repealed the act of May 11, 1871.

In passing we may be permitted to remark that the law on the subject of prohibited banks, etc., for gaming, stands precisely as provided by the Penal Code, except the additions and alterations embraced in the act of April 9, 1873. By the last-named act there were added to the list of prohibited games, besides those enumerated in the repealed act of May 11, 1871, and which are mentioned in the repealing act, pigeon-hole tables, Jenny Lind tables, and nine and ten-pin alleys, and the betting on them. See the act, p. 36, Laws of 1873.

It would seem, at the first view, that, inasmuch as the keeping and exhibiting, for purposes of gaming, of pigeon-hole tables, Jenny Lind tables, and nine and ten-pin alleys, and betting on them, are prohibited by name by the act of April 9, 1873, when they were not enumerated in the law before its enactment, therefore the legislature intended that these games were specially prohibited.

Then, too, the two acts of April 9, 1873, and June 3, 1873, being passed at the same session of the legislature, ought, if possible, to be construed together, so that both might stand as one embodiment of the legislative will. But it will be perceived that these two acts, though passed at the same session, cannot, by any known rule of construction, be so reconciled as that both may stand; and, in case there is such repugnance between the two as that one must give way, the rule is that the last must stand as the expression of the will of the legislature. For rules of construing

statutes on the same subject, and acts passed at the same session of the legislature, see *Cain* v. *The State*, 20 Texas, 355, and Pasc. Dig., note 1013. The decision of this cause, however, does not stand on these grounds.

It will be seen that these two acts of the legislature of 1873 are on different subjects—one looking to the suppression of the vice of gaming, the other to the general subject of revenue by taxation—so that the attention of the legislature was not necessarily drawn to the one whilst enacting the other. The latter act, that of June 3, imposes a tax on these only: pigeon-hole tables, Jenny Lind tables, and nine and ten-pin alleys, the use of which was prohibited by the act of April 9, 1873; and on ten-pin alleys a tax of $250 is imposed by the act of June 3, 1873. So, if it, was not an indictable offense before the law of April 9, 1873, to exhibit or bet at a game, because the state had licensed the game and thereby made it a source of revenue to the state, it cannot be indictable to bet at, or exhibit, any of the devices for gaming named in the act of April 9, 1873, when, by the subsequent act of June 3, 1873, the legislature gave its sanction to these very devices by making them also a source of revenue to the state. It is not to be supposed that the legislature intended to punish criminally any of the acts from which its revenue is in part derived.

From the foregoing considerations we conclude that to use, for gaming, a ten-pin alley, since the passage of the act of April 9, 1873, is no more a violation of law than before; that the latter act is subject to like rules of construction as the former laws on the same subject.

On the authority of the cases of *Houghton* v. *The State*, 41 Texas, 136, and *The State* v. *Johnson*, 41 Texas, 504, we hold that to keep or exhibit a ten-pin alley, or bet upon the same, is not an indictable offense, because ten-pin alleys are taxed—unless, indeed, the same should be used in some

other manner, or for some other purpose, than as, in common acceptation, is understood to be the ordinary uses of a ten-pin alley.

This prosecution must be dismissed because the indictment does not charge any offense known to the law.

*Dismissed.*