## JONES VS. DAVIS.

HIGHWAY: PRIVATE ROAD. (1, 2) *Rights of traveler as to removal of obstructions.* (3, 4) *Rights of land owner as to maintaining obstructions. What acts of land owner are a denial of the public right of way.* (5) *Court and jury.*

1. A traveler on a public highway has a right to remove an obstruction found therein, so far as may be necessary to enable him to pass over the road.

Jones vs. Davis.

2. But one who removes a fence erected by the owner of the land across a mere private road over which persons have previously been permitted to pass, commits a trespass.

3. In trespass *quare clausum,* where the question was, whether a certain road was a highway or a private road, there was no error in charging the jury that " it was unimportant whether the road was used by two or three persons or a greater number, if it was used as a public highway for any one to travel upon who desired to, without objection by the owners of the soil over which it passed, for a period of ten years or more prior to the alleged trespass, and work was done upon it within that time by direction of the road overseer of the district."

4. The continued and habitual maintenance, by landowners, of fences with gates or bars across a road running through their lands, would be an unlawful obstruction if such road were in fact a highway; and where the road has not been laid out by public authority, and such fences are erected and maintained before the public have acquired any right by user, these acts *conclusively negative* any inference that the owners intend or admit the road to be a highway.

5. In such a case, the facts being undisputed, it was error to submit the question of highway to the jury.

APPEAL from the Circuit Court for *Iowa* County.

Action for trespass to plaintiff's close, in breaking down his fence. Answer, that the *locus in quo* was a public highway. It appeared from the evidence that the portion of plaintiff's fence taken down by the defendant was upon a road or lane running across plaintiff's land, and continued thence upon land belonging to defendant's father; that this road had been open from 1853 to 1870, when the plaintiff fenced it up; that during that time it had been occasionally used by Davis, sen., and a few others; that Davis, sen., had worked out half of his road tax on it in 1861 and 1862, by the direction of the overseer of highways, and had also worked on it in other years, but that afterward the chairman of the town board stated that this track was not a public highway, and no money was to be expended on it; that for ten years or more Davis, sen., had had gates and bars at several places across the track on his land, which had been kept open during the day time, but closed at night; and that the track was used for herding cattle.

There was some evidence tending to show that Mrs. Davis had forbidden the fence across the track on the land of Davis, sen., to be taken down, and that she kept it fenced a portion of the time.

The plaintiff testified that when he was putting up his fence along the track, he told defendant's father that he would leave a strip of land which would be very convenient for the neighbors, and that the latter assented, and did not claim the road as a highway : but this testimony was contradicted by defendant, who was present at the conversation. The remainder of the testimony, and the instructions given by the court below, sufficiently appear from the opinion.

Verdict for the plaintiff. A motion for a new trial was overruled, and judgment rendered on the verdict; from which defendant appealed.

*Cothren & Lanyon* and *Spensley*, for appellant:

1. The user contemplated by the statute, R. S., ch. 19, sec. 85, must be of a public nature, and not, as in this case, a mere convenience to a single individual. The road as a *whole* should be used by the *public* to constitute it a road by user. Private use will not establish a highway. *Scribner v. Blute*, 28 Wis., 151 ; *Hanson v. Taylor*, 23 id., 552, 578, 581 ; *Holdane v. Trustees of Cold Spring*, 23 Barb., 103 ; *Bissell v. N. Y. Cent. R. R. Co.*, 26 id., 630 ; Angell on Highways, 127 ; 2 Washb. R. P. (3d ed.), 42, 46, 47 ; *Poole v. Huskinson*, 11 Mees. & Wels., 827 ; *Wood v. Veal*, 5 Barn. & Ald., 454 ; Thompson on Highways, 52. A road which is used by a few persons only, a portion of the public, cannot be made a public highway by user. *Poole v. Huskinson*, 11 Mees. & Wels., 827 ; 8 Cush., 195 ; Washb. on Easements, 135 ; *Hall v. McLeod*, 2 Met. (Ky.), 98. 2. Such use by the public must be free and unobstructed. The obstructions continuously maintained by plaintiff and defendant in this case, were inconsistent with the use of the road as a public highway. *Seward v. Town of Milford*, 21 Wis., 485 ; Washb. on Easements, 101–103, 133. 3. The bottom of the

*cul de sac* in this case was defendant's barn yard; and the road which led to it could not become a highway by user. Thompson on Highways, 3–5; *Moll v. Benckler*, 30 Wis., 584. 4. All the travel on the road was by the permission and license of the plaintiff. *Buchanan v. Curtis*, 25 Wis., 99. The user mentioned in the statute was not intended to be a matter of permission. *Hanson v. Taylor*, 23 Wis., 552; Washb. on Easements, 135. 5. Working a private road as a highway does not make it such. *Miller v. Garlock*, 8 Barb., 153; *Trustees v. Otis*, 37 id., 501. 6. The evidence showed that the track had been materially changed in direction, which would prevent its becoming a road by user. *Holmes v. Seely*, 19 Wend., 511. 7. The defendant is estopped by his own acts from claiming that this is a highway. 1 Greenl. Ev., § 207; *Carpenter v. Mann*, 17 Wis., 155; *Williams v. Fink*, 18 id., 265; *Hanson v. Taylor*, 23 id., 579.

*M. J. Briggs*, for respondent:

1. The *locus in quo* had become a public highway by user. R. S. 1849, ch. 16, sec. 80; R. S. 1858, ch. 19, sec. 85; *Hanson v. Taylor*, 23 Wis., 547; *Tomlinson v. Wallace*, 16 id., 224. 2. The instruction of the court that in order to become a highway under the statute, the road must have been necessary for, and used by, at least two or three families, *in a neighborhood capable of a larger settlement*, was as favorable to the appellant as the law would warrant. 3 Kent's Com., 432. 3. A mere *cul de sac* may become a highway by dedication, or by user, which raises a presumption of dedication. 2 Smith's L. C., 216; *Bateman v. Bluck*, 18 Q. B., 870; *Rugby Charity v. Merryweather*, 11 East, 376; *People v. Kingman*, 24 N. Y., 565; *Wiggins v. Tallmadge*, 11 Barb., 457; *People v. Jackson*, 7 Mich., 451; *Stone v. Brooks*, 35 Cal., 489; *Simmons v. Mumford*, 2 R. I., 172. 4. A highway is defined as " A way or passage open to all; a way over which the public at large have a right of passage." It is not necessary that any considerable portion of the public should actually pass over the road, but it must be open

and free to all, and must be necessary or convenient for some portion of the public, who actually do use it as a way. 2 Bur. Dic., title "Highway;" 2 Smith's L. C., 246; Laws of 1873, ch. 257. 5. It cannot be claimed that the acts of Davis, sen., in building bars, etc., destroyed the public character of the road, and his intention in so doing was properly left to the jury. 2 Smith's L. C., 227; *Bowen v. Team*, 6 Rich., 298; *Green v. Bethea*, 30 Ga., 896; 2 Smith's L. C., 216; *Rex v. Marquis of Downshire*, 4 A. & E., 713. 6. The acts of the plaintiff, in fencing off the lane, and allowing it to be traveled and worked so long, in connection with his declarations that it was for the accommodation of his neighbors, show conclusively a dedication to the public. 2 Smith's L. C., 218, 219, 225, 226; *Buchanan v. Curtis*, 25 Wis., 99; *Wiggins v. Tallmadge*, 11 Barb., 457; *Devenpeck v. Lambent*, 44 id., 596. This being the case, the plaintiff could not recover in any event; and this court will not direct a new trial when it appears that the result must be the same. *Manny v. Glendinning*, 15 Wis., 50; *Hooker v. State*, 7 Blackf., 272; *Casteel v. Casteel*, 8 id., 240; *Carey v. Callan's Ex'r*, 6 B. Mon., 48; *Routh v. Bank*, 12 S. & M., 190; *Lobb v. Lobb*, 26 Pa. St., 331; *Morris v. Runnels*, 12 Texas, 178.

COLE, J. It is very manifest that the vital question in this case was, whether the *locus in quo* was a public highway. If it was, it is conceded that the defendant might remove the obstruction without being guilty of a trespass, in order to pass over the road and use it for the purposes of travel. Upon this point counsel do not differ. But it is claimed by the plaintiff that the *locus in quo* never was a public highway, but was a mere private road or lane kept open and used by a few persons and families residing in the neighborhood, and that he had the right to shut it up where it crossed his land, at any time to suit his convenience. It was not claimed that the road in question was ever laid out by the public authorities; but the claim was, that it had become a legal highway by user. The

court instructed the jury, in substance, that if the road in ques-
tion was a mere lane or private road intended for the accomo-
dation of the defendant and persons residing on his farm, or if
the persons traveling through the lane did so by the indulgence
or license of the plaintiff, express or implied, then the defend-
ant had no right to remove the fence. The court further told
the jury that it was unimportant whether the road was used
by two or three persons or a greater number, providing it was
used as a public highway for any one to travel upon who de-
sired to, without objection by the owners of the soil over which
it passed, for a period of ten years or more prior to the com-
mission of the alleged trespass, and work had been done upon
it within that time by direction of the road overseer of the dis-
trict. We do not see any objection to these portions of the
charge and instructions given. But there was testimony, clear
and uncontradicted, that gates and bars, in four different places
within the distance of a quarter or half a mile, were put up by
persons residing on this road or lane, for the purpose of herd-
ing stock. These gates and bars were open through the day,
but were closed or put up at night. And the instruction of
the court in regard to the inference which might be drawn
from the erection of these fences and gates across this road
seems to us calculated to mislead the jury when considering
the evidence upon that point. The court told the jury that if
the defendant was engaged with his father in shutting up the
highway as it ran eastward through the land occupied by them,
thus rendering the road or lane a mere private way for the
benefit of the farm occupied by the defendant, he could not
complain if the plaintiff should shut up such private way;
"but the inclosing of a highway in a pen or pasture for the
purpose of herding stock or cattle at night, with gates and bars
for the accomodation of the travel along the highway, is not
such an obstruction as would preclude the defendant from
moving a fence, across the lane, intended to exclude travel
therefrom altogether. If such gates and bars were exclusively

for the accommodation of the public," the court added, it was for the jury to determine whether they furnished evidence of an admission or denial by the defendant of the right of the public.

Now the error in this portion of the charge was in submitting to the jury the question whether the erection of fences and bars across the passage-way, and maintaining them for a number of years, afforded any evidence of an admission on the part of the owners of the soil of any right to use the way for a public road. These acts, as it appears to us, conclusively negative any inference that the owners intended that the lane should be a highway. For surely nothing can be more inconsistent with the purpose and object of a public highway than the right of any individual to fence it up or put bars across it. A highway, from its very nature, must be open and free for the passage of all persons, both by day and night, who may have occasion to travel over it. No one has a right to inclose it with gates and bars for the purpose of herding cattle at night; and where the owner of the soil does thus fence up a way, he evinces in the most unambiguous manner an intention to exclude the public from it. The plaintiff testified that "for fifteen years people could not get into the lane through *Davis'* land without taking down bars near his house." The witness Thomas Dring swears to substantially the same thing. On the part of the defense, some of the witnesses testify that bars were built by defendant's father across the lane about ten years before the trial. Since then, confessedly, two or three gates have been erected at different places in the lane. These acts indicate an intention on the part of the owners of the soil to exclude the public travel, and to retain absolute control over the way. It is impossible for the public to use a highway thus fenced up and obstructed by gates. It is idle to say they may accommodate the public, or exist for any time without destroying the character of the road as a highway. And as there was no conflict whatever in the evidence that the dis-

puted road or lane had thus been obstructed for years — and before it could have become a highway by user, — the court should have told the jury that this fact indicated an unmistak-able purpose on the part of the owners to prevent the use of such road as a highway. For it did amount to an absolute denial, by acts, of the right of the public to travel over the road and to use it as all highways are and must necessarily be used.

For these reasons the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.*— So ordered.

A motion for a rehearing was denied at the June term, 1874.