JONES *v.* PHILLIPS.

Opinion delivered April 14, 1894.

*Highway—Dedication—Prescription.*

> In a suit to enjoin the owner of land from obstructing a highway through her field, an easement which it was claimed the public had acquired either by dedication or prescription, the evidence was that, for many years previous to 1881, the owner had maintained gates and permitted the neighbors, and such of the public as chose to avail themselves of the privilege, to use a road through the field ; that in 1881 the county court appointed view-

ers to establish a public road across the land, a majority of whom reported favorably, but that nothing further was done by the court; that thereafter the owner kept the gates locked until finally she closed up the road entirely, whereupon this suit was brought.

*Held,* that the acts of the owner in permitting travel through the field constituted a mere license, and did not amount to a dedication.

*Held,* also, that the qualified use of the road by the public, with the owner's leave, would not support a claim of highway by prescription.

Appeal from Jefferson Circuit Court in Chancery.

JOHN M. ELLIOTT, Judge.

*N. T. White* for appellant.

1. The steps required by statute to open the road were never taken. Mansf. Dig. secs. 5930–5938.

2. The evidence is not sufficient to establish a road by prescription. No adverse user is shown—the travel was permissive only. The use must be hostile and continuous. 47 Ark. 431; 50 *id.* 53; Elliott on Roads and Streets, p. 137; 110 Ind. 509; 58 Iowa, 567; 41 Wis. 490; 77 Pa. St. 432; 35 Wis. 376; 41 Iowa, 698; 30 Ga. 896; 30 Ind. 389; 73 Me. 53; 105 Mass. 319; 22 Mo. App. 435; 142 Mass. 325.

*White & Woolridge* and *Met L. Jones* for appellee.

The public acquired the right to use this as a public road, and appellant could not divest this right by any act of hers. It is a public road by dedication and prescription, as the testimony shows. 50 Ark. 57; 5 Am. & Eng. Enc. Law, 408 and note 1; 83 Am. Dec. 264; 6 N. E. Rep. 866; Tied. Real Prop. sec. 611; 30 Eng. L. & Eq. 207; 11 East, 375; 12 Ga. 239; 12 Minn. 89; 19 N. Y. 256; 17 Ill. 249; 5 Harr. (Del.), 448; 18 Ind. 547; 19 Barb. (N. Y.), 179; 1 Ired. L. (N. C.), 432; 7 Jones, L. (N. C.), 22; 13 Wis. 159, 663; 50 Cal. 265; 53 *id.* 437; 4 Fed. Rep. 161; 47 Ark. 431; 90 Mo. 334; 19 Ill. App. 204.

BUNN, C. J.   The appellee, Thomas M. Phillips, as road-overseer of one of the road districts of that county, instituted this proceeding in the Jefferson circuit court in equity, at its May term, 1892, praying for an order restraining the appellant from obstructing a portion of the public road alleged by him to be under his supervision.   After hearing the cause, the chancellor granted the appellee's prayer, and the appellant appeals to this court.

The portion of road in controversy, and affected by this proceeding, is as follows, as set out in the abstracts, to-wit :

"A public road from Astor Point, on the Arkansas river, to the intersection of the Pine Bluff and Harris Ferry road, near Altheimer, Arkansas, through the northeast quarter of section 2, township 5 south, range 8 west, from the northwest corner to the southeast corner of section 2."   This means that the road in controversy runs diagonally through said quarter section from its northwest corner to a point on its south boundary line, nearly equidistant from the southeast and the southwest corners.   The residence of appellant is situated on this road, and near to the point on the southern boundary line of the quarter section where the road passes out, going south, into the Phillips plantation.

It appears from the testimony that the place—the Jones place—was settled by Dr. Jones, husband of appellant, say in 1860, the land being in the name of the appellant.   It was then mostly, if not altogether, in the woods, a trail at the time running about where the piece of road in controversy now is, along which people were in the habit of passing from the back country to the nearest landings on the Arkansas river.   Dr. Jones built his residence and cleared up, inclosed and put in cultivation the quarter section described, and, in the course of time, other adjoining lands, perhaps ; making quite an

extensive plantation, as appears from the plat exhibited with appellant's answer. At first he made what is known as a "turn-row" where the trail was, and where the road in controversy is now located; putting up a gate where it entered the quarter section at its northwest corner, and another at the point on its southern boundary where the road or turn-row passed out of the field, going south, and into the lands appearing as the "Phillips lands." It appears that the gates were used for the purpose of permitting people to pass through the field along the road, and doubtless for purposes personal to the owner. The testimony does not show any express intention or wish of Dr. Jones, or of his wife, the appellant, concerning this road at this time and for some years afterwards. But, while they permitted the public to thus use this piece of road through their field, there is no evidence that they surrendered any of their rights or dominion over the same in any way whatever, but continued at all times to exercise just such control over the same as any farmer would over a private road through his plantation, which he is willing that his neighbors, and such of the public as choose to do so, should make use of for their convenience. There is nothing in the evidence to show that the owners treated it as any other kind of road.

It appears that, at the April term, 1881, of the Jefferson county court, a petition was presented for the opening of a county road in this locality, extending from the Turner place to Astor landing; and the appellee, Thomas M. Phillips, Capt. N. T. Roberts and a Mr. Bogy, were appointed by that court, as viewers, to lay out and establish the road, as the law requires in such cases. Immediately, the appellee and Capt. Roberts entered upon the discharge of their duties as such viewers, and visited Dr. Jones to confer with him concerning the location of the proposed road, and had a talk with him

about establishing the road through his field, to which he strenuously objected, claiming that it ought to be established on the section and township lines, telling them that he would rather they would not locate the road through his field, and promising, apparently as an inducement for them not to so locate it, that it should never be closed. But the viewers refused to act upon his promise, and reported to the county court recommending the establishment of the road through the field where the road in controversy ran. Remonstrance having been made, the report was never acted upon, and the project fell through. Dr. Jones soon afterwards died.

If it is claimed that this road had been previously dedicated to the public use as a highway by Dr. Jones, or if it is claimed that the public had already acquired the right by prescription, it is remarkable that the public road officials of the county—the viewers, one of whom was the appellee—should at such a time be seeking to further strengthen the right and title of the public to this piece of road by endeavoring to impress upon it the character of a statutory public highway. Had the dedication already been made by the owner and accepted by the public, or had the general, continuous and uninterrupted adverse possession of the public for the statutory period already ripened into an easement, it would seem that this appointing of viewers, and their viewing, the route, and performing other duties in that direction all constituted a most idle ceremony and a work of supererogation. If the right had been already acquired by the public, the securing of it in a different mode could not add anything to it. Had the effort to establish the statutory right been successful, doubtless the claim that it had been acquired previously in any other of the modes known to the law would never have been heard of any more. But, that effort having proved a failure, it is thought to make the claim serve a useful purpose in-

stead.   To us, the effort to secure the statutory right, and that, too, by the appellee in this case, was something more than a failure ; it was an admission that the right had not theretofore existed in any form.

After the death of Dr. Jones, in 1881, the appellant assumed control of the plantation, and for three or four years kept the gates closed and, the abstract says, "locked," giving a key to such of her neighbors as desired to pass through on the road, and giving permission every year to the appellee to haul his cotton crop over the road, as appellant states (the appellee denying that he obtained her permission to pass through, but averring that he did so at his pleasure.)   In 1884 or 1885, appellant, finding the gates little protection against indiscriminate travel through her field over the road in question, took them down, and closed up the gaps thus formed by fences in their places.   This also proving no protection against the public, a little while before the institution of this proceeding, she substituted barbed wire fences ; and the appellee, and perhaps others, being thus driven to the last resort, brought the suit for the purpose named.

It seems that the county court appointed various overseers over this road district from 1884 until 1892— first Ackland, then the appellee, and then Holland—without accurately designating the location of the road at any time.   The appointments of overseers seem to have been mere moves on the chess board by one party and another, so far as individual purposes were to be considered.   In fact, from the death of Dr. Jones until the institution of this suit, there seems to have been a perpetual strife and struggle over the possession of this road between the appellant—the owner of the soil—and those who essayed to act in behalf of the public.   In the meantime, nothwithstanding the several appointments of overseers over this road district, the only work ever

done by any of them, or by any one, even apparently on behalf of the public, was the placing of a few fence rails over a sort of ditch that crosses it, and that without the knowledge of the appellant.

It is impossible for us to discover any intention on the part of the appellant to make a dedication by any acts of hers shown in the evidence. Moreover, it would be most contradictory for us to say that a right by prescription could arise out of such a state of neighborhood warfare as is disclosed in this record.

In his work on Roads and Streets, Mr. Elliott says : "If the owner throws open a way to the public, and so conducts himself as to induce a well-founded and reasonable belief that he has a correct knowledge of all the facts, and that, having this knowledge, he *intends* to dedicate the way to the public use, he will be held to have made a dedication, etc."

We cannot say, from the evidence in this case, that an implied dedication was made, under the rule stated above. Their acts and conduct do not show, as appears to us, any intention on the part of Dr. Jones, or of the appellant, before or since his death, to make the dedication to the public. Their acts and conduct throughout cannot be construed, in our opinion, into anything more than to give a mere license to their neighbors, and such of the public as choose to avail themselves of it. An intent essential to a valid dedication must be something more. It must be to vest at least an easement in the public.

The main contention of appellee is that the public has acquired the right by prescription—by continuous, uninterrupted and adverse use for more than the statutory period. At least, such must be his contention, if he would claim for the public by prescription, for such is substantially the language of this court in the case of *Howard* v. *State*, 47 Ark. 431, and in all other cases on the subject.

The owners of this property have never ceased to keep gates or fences, where it enters this field on either side. They have, therefore, never ceased to exercise dominion absolute or qualified over this passageway. The public, therefore, cannot be said to have held at any time adversely to the owner. *State* v. *Green*, 41 Iowa, 693; *Jones* v. *Davis*, 35 Wis. 376; *Chestnut Hill Turnpike Co.* v. *Piper*, 77 Penn. St. 432; *Shellhouse* v. *State*, 110 Ind. 509; *Cyr* v. *Madore*, 73 Me. 53; *State* v. *Mitchell*, 58 Iowa, 567.

It seems that any act on the part of the owner, reserving to himself a right or use, which is or may be inconsistent with or antagonistic to the free use on the part of the public, as a highway, has the effect of destroying the right of the public by prescription. Unlike dedication, this is a claim in opposition to the intention, expressed or implied, of the owner, and there must not be any of the elements of prescription wanting, in order to establish the right.

We are of the opinion that the public's use of this road has not been so continuously and uninterruptedly adverse to the ownership of the soil as to have ripened into an easement in behalf of the public. We find therefore no equity in the bill, and the same is dismissed, at the cost of the appellee.