WASHINGTON v. STATE.

Opinion delivered January 24, 1921.

1. HIGHWAYS—WARNING TO WORK ROAD.—Service of a warning to work a public road can not be had by leaving it with the wife of the person to be warned, instead of serving it personally or by posting it in some conspicuous place.

2. HIGHWAYS—APPEARANCE AFTER DEFECTIVE WARNING.—Evidence
that defendants appeared at the time and place stated in the
warning notice, but refused to work, *held* sufficient to warrant
the submission to the jury of the issue whether they appeared on
the day they were warned to appear and put themselves under
the dominion of the road overseer for the purpose of working
the road.

3. HIGHWAYS—WHAT IS PUBLIC HIGHWAY.—A conviction for failure
to work a public road will not be sustained where there is no
evidence either that the road was laid out by the United States
and known as a military road, or that overseers had been ap-
pointed by the county court with directions that hands be ap-
portioned to work the road, or that the public, with knowledge
of the owner, had claimed and exercised the right of using the
road as a public highway for a period of seven years.

Appeal from Conway Circuit Court; *A. B. Priddy,*
Judge; reversed.

*Strait & Strait,* for appellants.

1.  Under the undisputed testimony the State failed
to make a case against defendants for failure to work
the road *after having been legally warned.*

2.  The road was not a public road, and if it was
defendants were not subject to road duty.

3.  The court erred in refusing to give instruction
No. 2 for defendants. Three full days' warning was not
given. 52 Ark. 265; *Ib.* 270-272; 42 *Id.* 93; Kirby's Di-
gest, § 5263. The warning was not according to law.
62 Ark. 272; 35 *Id.* 501; 22 *Id.* 362.

*John D. Arbuckle,* Attorney General, and *Silas W.
Rogers,* Assistant, for appellee; *Elbert Godwin,* of coun-
sel.

1.  The affidavit or information filed by the deputy
prosecuting attorney was not defective or insufficient.
The allegations were sufficient and complied with our law.
Kirby's Digest, § 2243; 114 Ark. 38; 84 *Id.* 487; 5 *Id.*
444; 19 *Id.* 613.

2.  The testimony shows that the road was a public
highway by prescription and by proper orders of the
county court. 47 Ark. 431; 102 *Id.* 553.

3. The warning was sufficient. 51 Ark. 103. The evidence sustains the verdict and defendants appeared in obedience to the warning, but failed to work and refused to work. Kirby's Digest, § 7255. The information was sufficient, as it enabled the court to correctly pronounce a judgment and was sufficiently certain. Kirby's Digest, § 2243; 84 Ark. 114 *Id.* 38; 5 *Id.* 444; 19 *Id.* 613.

WOOD, J. The appellants were convicted on separate informations filed by the deputy prosecuting attorney. The informations charged that appellants on the 19th day of August, 1920, did commit the crime of refusing to work public roads in Conway County, Arkansas, after having been lawfully warned so to do. The causes were consolidated for trial in the court below, and have been consolidated here for the purpose of briefing. The transcript in each case is identical except as to the names of the appellants.

On the 16th day of August, 1920, each of the appellants was warned to meet at I. Carter's on the 19th day of August, 1920, for the purpose of working the public roads in Welbourne Township. The above warning, or notice, was served by leaving the same with the wives of the respective appellants. The warning or notice was not posted in some conspicuous place.

The county judge of Conway County testified, over the objection of appellants, that he authorized the overseer to work the particular road in question; that he had told them two or three times to go ahead and work that piece of road. It was not an order of the county court. There were no proceedings in the county court to that effect. He told them to work it; that the order had been made sometime before witness came in about making rural routes public roads and witness considered it a public road. It was witness' understanding that there was a rural route over the road. The people up there had been after witness about working that piece of road, and witness told the overseer to go ahead and work it.

Witness did not know how many in the country up there used that particular piece of road. Witness instructed the overseer to work it because witness figured that it was in the interest of the public to have it worked.

Witness Stringer testified that he was the road overseer. He authorized Summerhill to warn the hands to work up there on that road. Witness went up there that day (the 19th). Witness had asked Summerhill to look after the road until witness arrived on the ground. Witness commenced to improve the road because they were all talking about that road being in bad shape to the Conway County folks. Witness came and asked the county judge what about working it, and he said, "Sure, you work that road over there, for it is a county road." Witness was not there when the negroes refused to work and went home. He was thirty minutes late. When witness arrived; he was told that they had come over to report, but that they wouldn't work and had gone home.

Charlie Summerhill testified that the manager up there on the road got witness to warn the hands and help him with the road. Witness did all the warning. He warned the appellants, and they came. Witness asked Junior if he had come to work. Witness couldn't recollect for certain what he said to him. Junior had something to say about it; that he couldn't work that day, and he went on down the hill a little piece further where some more (hands) were piling brush, and witness asked him why he didn't bring his team or something that way, so he could work on the road, and they talked on some little bit, but witness couldn't say exactly what was said between them. Another one he told to go up there and pull a tree down. They were pulling the tree over with a rope—had a block taking the tree down. Instead of doing that, he went down the hill and went across over the fence and left, and the other two just walked back up the road and walked off. Mr. Stringer, the overseer, at that time had not arrived. All three negroes appeared

on the place where they were warned to come. Witness was asked:

"Q. They reported ready for work, did they?

"A. Yes, sir; they were on time there at the time we were starting out."

Witness further stated that the road in question comes into the old military road, the Atkins road, at Oliver's. When it gets to that road, it stops. Witness was working on that road that comes out of Pope County, a road that leads from the public road back into the Pope County bottoms. They were trying to fix a road up there for people to get out of the Pope County bottoms. They traveled the military road, the Morrilton and Atkins road, about a quarter, there on this road, before they turned off to go to Blackville where witness had a gin. Witness understood all the time that the road in question was a public road to be worked as such. There hadn't been any road work on that side in three or four years. No one had been warned to work on this road until witness attempted to work it that time. Witness had lived up there pretty well all his life. The road in question had been considered a public road and mail route for a long time. Witness understood that it was on the section line. All the other hands came on the same kind of a warning he had given the appellants. Appellants came up there and stood around there some little bit and walked off.

Another witness testified that he was present the day the appellants were warned and appeared on the road. Appellants came up to work the road, passed off some little jokes and went away. One of them said he had a summer ax. They didn't bring anything to work the road. A little later when they went down near the county line to trim up some trees, there seemed to be something wrong, and the first thing witness knew the darkeys were gone. Witness heard them testify in the lower court that they had come up in answer to the summons. Witness was asked what reasons they offered

and answered, ''They just walked away and didn't want to work.''

Another witness stated that the appellants came on the road and stayed something like an hour. Witness asked them where their tools were to work with, and Dotson spoke up and said his tools were summer tools and wouldn't work. Gene Washington and the other one didn't say anything. Summerhill came along and took some of them down the hill side and left witness and Washington to cut down a tree. They had to get a block and tackle to pull the tree down. Washington went to get the hands to help, and witness went to get the block and tackle. Washington never came back. The other fellows said they would come back tomorrow.

The above is substantially all the testimony introduced on behalf of the State.

On behalf of the appellants, a witness testified that he had lived at Blackville for twenty years; that the road in controversy was not at that time a rural mail road; that the road from the Morrilton and Atkins road, the Wire road, was not a public highway and never had been worked as one, and it was not a mail road. It was not a county road. Witness had never seen a petition for a county road, and the mail had been cut off of the road, and that is the reason why the witness stated that it was not a county road. The public used it, but it didn't go through the court as a county road. There used to be a mail route over it.

The ruling of the court was correct in instructing the jury that the warning was not sufficient. *Lowry* v. *State,* 52 Ark. 270, and cases cited.

The testimony was sufficient to warrant the court in submitting to the jury the issue as to whether or not appellants appeared on the day they were warned to appear on the road and put themselves under the dominion of the overseer for the purpose of working the road. The instruction on this issue was correct.

There is no testimony to show that the road in question was laid out in pursuance of law, that it was laid out by the United States, and was known as a military road. There is no testimony to show that overseers had been appointed by the county court, and that such court had directed "that hands should be apportioned" to work this road. There is no evidence to show that the public, with the knowledge of the owner of the soil, had claimed and continuously exercised the right of using this road as a public highway for a period of seven years.

This particular road, therefore, does not come within any of the statutory definitions of a public highway, nor within the rules declared by this court for establishing a highway by prescription. Crawford & Moses' Digest, §§ 5222-5223; *Howard* v. *State,* 47 Ark. 431; *Patton* v. *State,* 50 Ark. 53; see, also, *Ayers* v. *State,* 59 Ark. 26; *Jones* v. *Phillips,* 59 Ark. 35; *State* v. *LeMay,* 13 Ark. 405.

The burden was on the State to prove that the road in question was a public road in order to warrant a conviction. *Howard* v. *State, supra.* There is no evidence to sustain the verdict. The judgment is therefore reversed and the causes are remanded for a new trial.