AUTREY *v.* LAKE.

4-4855

Opinion delivered December 20, 1937.

244

*S. S. Hargraves* and *Mann & Mann,* for appellants.
*Norton & Butler,* for appellees.

HUMPHREYS, J. Mrs. Gladys Autrey, appellant herein, and F. J. Autrey, her husband, in 1928 purchased from George R. Haynes the following described real estate in St. Francis county, Arkansas, to-wit:

"The southeast quarter (SE¼) of the southeast quarter (SE¼) of section eighteen (18), and all that part of the southwest quarter of section seventeen (17) which lies west of Shell Lake, all of said land being in township six (6) north, range six (6) east, and containing in the aggregate 49.90 acres, more or less."

This land was the homestead of said appellant and F. J. Autrey. F. J. Autrey died in 1933 and Mrs. Gladys Autrey became the sole owner of the land. After the death of F. J. Autrey, Mrs. Gladys Autrey contracted to sell said land to Eugene Woods for $6,500 and certain lands in Crittenden county, Arkansas, and he paid her $500 in cash, agreeing to pay her the balance when she furnished a good and sufficient title. Eugene Woods declined to accept the title furnished because there appeared in record book 118, page 286, in the recorder's office in St. Francis county an easement which was signed by F. J. and Mrs. Gladys Autrey in 1931 to R. H. and D. M. Lake, appellees herein, across said land for a road or right-of-way along the west side of Shell Lake. R. H. and D. M. Lake bought 24 acres on the west side of Shell Lake adjoining and north of the land owned by F. J. Autrey and Mrs. Gladys Autrey from S. P. Staggers, who had contracted to buy it from the Autreys and had given his note for same. Staggers testified that at the time he bought it the Autreys told him they would keep the road open and that when he sold it to the Lakes he told the Lakes what the Autreys had said to him. The Lakes paid the Staggers notes for the 24 acres to the Autreys. The deeds that passed contained no easement or right-of-way over the tract owned and occupied by the Autreys. The

Lake estate owned a tract of land on the west side of Shell Lake and north of the 24 acres they purchased from Staggers. When Eugene Woods refused to accept the title furnished by Mrs. Gladys Autrey she brought a suit. against the Lakes to cancel the easement they had signed in 1931 alleging that it was void for several reasons, one being that it was on and over the homestead of herself and husband and was not acknowledged by her. She made Eugene Woods a party defendant in her suit seeking to enforce the performance of the contract she made with him for the sale of the land.

The Lakes filed an answer denying the alleged invalidity of the easement and asserting the right of· the use of the strip of land under the easement and also the right to the use thereof by prescription on the part of the public.

The trial court, after hearing the evidence, found that the easement was a valid and binding instrument and, also, that the right-of-way described in the easement had become a public road prior to that time by the long, general, continued and adverse use of same by the public, and dismissed the complaint of Mrs. Autrey and enjoined her and those claiming under her from interfering with the use thereof by the public including the Lakes, their servants, agents, employees and assigns, from which decree is this appeal.

The undisputed evidence reflects that the easement was an attempted conveyance of an interest in the homestead of F. J. Autrey and Mrs. Gladys Autrey; that the instrument was not acknowledged, but was recorded without being acknowledged. Section 7181 of Pope's Digest is as follows:

"No conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same."

In construing said section of the digest this court said in the case of Davis v. Hale, 114 Ark. 426, 170 S. W. 99, Ann. Cas. 1916D, 701, that: "The act of March 18,

1887, provides that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity unless the wife joins in the execution of such instrument and acknowledges the same. Under this statute, the wife must not only join in the execution of the deed of trust, but must also acknowledge that she has executed it in order to render it a valid incumbrance against the homestead.''

The purported easement was and is void and of no effect. The chancery court erred in holding that it was a valid instrument.

·Responsive to the issue of whether the public had acquired a right to use the land described in the easement as a public road by prescription, the evidence is voluminous. It would unduly extend this opinion should we attempt to set out in substance the testimony of each of about forty witnesses who testified in the case. It appears, without dispute in the testimony, that the land owned by the Autreys was wild and unimproved in any manner until 1919, and that the only roads or trails upon or across it until that date were made by parties entering upon the land wherever convenient in order to cut and haul out timber or logs. At about that time some predecessors in the chain of title of the Autreys built a three-wire fence around part of it with a gate near the southeast corner thereof and used the land for a pasture. None of it was in cultivation when the Autreys bought it. The Autreys built a house, store and a garage near the southeast corner of the land and a better fence around it and put in gates at the southeast corner and the northeast corner and have at all times maintained these gates and kept them closed and at times locked. There was very little travel through that way, but occasionally someone came along and drove his team and wagon or automobile through the gates and along the west side of Shell Lake. They opened and shut the gates when they did so. Some of the parties obtained permission from the Autreys to pass through the gates and some did not. Some of the parties were neighbors of the Autreys and some of them were parties on fishing trips or who had some business in that vicinity. After the Lakes began to make improve-

ments on the 24-acre tract they bought from Staggers they hauled some of their materials through the gates and along the west side of Shell Lake. In traveling through the gates they opened and shut them. The people who passed through the gates and over the road would wind about over the land seeking the best way to drive, some around one tree and some around another, avoiding sloughs by driving or riding around, all hunting the highest and driest way at the particular time they passed through the gates and over the land. There was no well-defined route to follow and use by them. The appellees tried on several occasions to acquire an easement or right-of-way along the west side of Shell Lake from George R. Haynes, who owned and sold the land to F. J. Autrey and Mrs. Gladys Autrey, but failed in their efforts to do so. They finally acquired the void easement from the Autreys for which they paid nothing. They testified that the consideration for the easement was a loan of $500 they made to J. F. Autrey, but it was admitted that Autrey paid them the full amount he borrowed from them. Mrs. Autrey testified that for three years prior to signing the easement the Lakes paid $25 a year to herself and husband for the right to pass through the gates and over the land, and she was corroborated in this respect by a witness or two. The Lakes denied paying anything for the use of the right-of-way.

There is no evidence in the record tending to show that any of the neighbors or any person who had ever passed through the gates had claimed the right to do so over the objections of the Autreys or adversely to their rights.

The county never assumed any control over the road and never worked it as a public road; in fact, the only work ever done at any place on the road was done by the Lakes after they procured the void easement. Judge E. A. Rolfe testified as follows:

"I am county and probate judge of St. Francis county, Arkansas, and have been county and probate judge of said county at different times about sixteen years. As such county and probate judge, I have charge of the construction and maintenance of public and county

roads of St. Francis county. There is no public or county road running north and south, or practically so, on the west bank of Shell Lake in this county. I did not work such a road or recognize it as a county road.''

We have read the evidence very carefully and our conclusion after an analysis thereof is that those who passed through the gates and used the so-called road over the land never did so with the intention of acquiring an easement for the public therein. There is nothing in the evidence to indicate that the Autreys intended by allowing their neighbors and a few others to use the so-called road to surrender dominion over it. We are convinced after reading all the evidence that the great weight thereof shows that the use thereof by Autrey's neighbors and the others who occasionally passed through that way was permissive only. We are confirmed in this opinion by the fact that the Lakes made diligent and persistent efforts to get an easement from the Autreys and also from their grantor, George R. Haynes. Had the public acquired an easement over the land by long, general, adverse and continuous use thereof it was wholly unnecessary for the Lakes to try to get a private easement from time to time in order to use the road. It is also significant that no one of their neighbors ever claimed any rights in the road by prescription or by the adverse use thereof for seven years with the knowledge of the Autreys that they were so using it.

Neither do we think that the Autreys ever estopped themselves by any promise they made to Staggers to keep the way open. At the time Staggers procured his deed he should have protected himself instead of waiting until after F. J. Autrey's death to claim that some oral promise had been made to him by F. J. Autrey in his lifetime.

In the case of *Jones* v. *Phillips*, 59 Ark. 35, 26 S. W. 386, the facts are very similar to the facts in the instant case. The court in that case said ''that the acts of the owner in permitting travel through the field constituted a mere license and that the qualified use of the road by the public, with the owner's leave, would not support a claim of highway by prescription.''

On account of the error indicated, the decree is reversed, and the cause is remanded with directions to

restrain the appellees, D. M. Lake and R. H. Lake, from using the road across said property, and to cancel the void easement and for further proceedings not inconsistent with this opinion.