**TEXAS & N. O. R. CO. v. HARVEY.**

**No. 11009.**

Court of Civil Appeals of Texas. Galveston.

Oct. 31, 1940.

Rehearing Denied Dec. 19, 1940.

Roy L. Arterbury, Ernest H. Folk, and Baker Botts, Andrews & Wharton, all of Houston, for appellant.

Maynard R. Heaner, P. Z. Sullivan, K. C. Barkley, and James L. Pardue, all of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 55th district court of Harris County—entered upon a jury's verdict in response to special issues submitted—decreeing to be a public road, street, or passageway, a strip of land approximately 600 feet in length by 54 feet in width, off of the west side of appellant's Clinton Docks tract of land on the north side of Houston Ship Channel, the west boundary of which is a common line with the east boundary of the appellee's property, the south end of such strip "coinciding with and meeting the north bank of the Houston Ship Channel and the north end of same coinciding with and meeting the Old County Road." The judgment further gave the appellee and her successors in title a permanent easement in the strip for passageway purposes, perpetually enjoining appellant from interfering with such use thereof, and awarding the appellee $3,500 damages for the loss of patronage sustained by her in her business on her adjoining property, to the date of the trial, caused by a high fence appellant had built on the division line between their two properties.

By stipulations upon the trial it was agreed that appellant had built the high fence complained of on June 27 of 1935, and that there was no issue of title involved in the cause, it being specified that the east line of the appellee's property is the west line of the appellant's; further, that the appellee's property, described in her suit herein for such injunction against the appellant, and which so adjoined on its west line the appellant's tract, had been acquired by her in a partition deed of June 19, 1926, between heirs of A. J. Johnson and wife, Minnie Johnson.

The verdict so made the basis of the court's determination that the described strip was a road, street, or passageway, found in ultimate purport and effect as a fact that the appellee and the public in general, of which she had been a member, had for more than ten years been users of the land for street, highway, and passageway purposes, and had acquired a prescriptive right therein as such, the appellee's own summary of the findings in her brief being in substance this:

"(1) There has been an adverse use of the strip of land in controversy by the public generally for a period of 20 continuous years prior to June 1, 1935;

"(2) The appellant acquiesced in the use of it by the public generally for that period;

"(3) Appellant did not dedicate to the public generally this strip as a road;

"(4) There had been an adverse use of this strip of land by Hattie Harvey and her predecessors in title for a period of 20 consecutive years prior to June 1, 1935;

"(5) That use by the public generally of this strip was without the permission of the appellant;

"(6) There had been an adverse use of this strip by the public generally for a period of over 10 continuous years prior to June 1, 1935;

"(7) The use of this strip during said period of time was without the permission of the T. & N. O. R. R. Co., appellant;

"(8) There had been an adverse use of this strip by Hattie Harvey and by those under whom she claims, for a period of 10 continuous years prior to June 1, 1935;

"(9) This use by Hattie Harvey, appellee, was without the permission of the appellant;

"(10) $3500, if paid in cash, will fairly and adequately compensate Hattie Harvey for any damages she had sustained as a result of a loss of patronage caused by the building of the fence, from the date the fence was built down to the date of trial."

In addition to the issues submitted, the appellant requested another in its own behalf, which, together with the trial court's order overruling it, was this:

"With respect to Defendant's Requested Special Issue No. 1 reading:

" 'Do you find from a preponderance of the evidence that the T. &. N. O. Railroad Company has at all times since it acquired the property East of and adjacent to the Johnson tract involved in this case exercised dominion and control over same? Answer "Yes" or "No".'

"The Court is of the opinion that the undisputed testimony shows that the issue, if given, should be answered by the jury in the affirmative, and the Court so finds. In this connection the Court states that in the opinion of the Court there is no inconsistency between the exercise of dominion and control over the property in controversy and the existence of the easement claimed by the plaintiff.

"To which action and ruling of the court the plaintiff then and there excepted."

In inveighing here against the judgment so adverse to it, the appellant first assails the court's refusal to give its requested peremptory instruction at the close of all the evidence for a verdict in its favor, upon the main ground that—as the court's quoted findings supra reflect—the undisputed testimony showed that the appellant had exercised full control and dominion over such property since it acquired the same in 1887, and that any use the appellee, or any third party, might have made of that strip of land, as the jury found, had been otherwise shown by the conclusive if not undisputed testimony to have been a permissive use thereof which the appellant could have withdrawn at any time; that none of such use by the appellee or other members of the public had ever been exclusive, since the strip or way had all along been also used by the appellant as its owner for its own purposes, wherefore, such use as appellee and others were so found to have made of it did not give any of them a prescriptive right therein.

After careful examination of the bulky record, inclusive of the 415-page statement of facts, this court is constrained to hold appellant's position to be well taken; indeed, our own authorities—upon the legal equivalent of the same state of facts in ultimate effect—appear to have uniformly so held. Those cases most directly in point

are these: City of Buffalo v. Delaware, etc., Ry., 68 App.Div. 488, 74 N.Y.S. 343, 351; Callan v. Walters, Tex.Civ.App., 190 S.W. 829; 29 C.J., Highways, page 379, sec. 10; Jones v. Phillips, 59 Ark. 35, 26 S.W. 386; Meckel v. Davis, Tex.Civ.App., 39 S.W.2d 1106, 57 S.W.2d 622, same case, approving prior holding on its facts, but reversing cause on new facts; 1 R.C.L., p. 693, sec. 6; 1 R.C.L., p. 694, sec. 7; 1 R.C.L., p. 695, sec. 9; 1 R.C.L. (Adverse Possession), pp. 701, 702, sec. 14; Sassman v. Collins, 53 Tex.Civ.App. 71, 115 S.W. 337, 339, writ of error refused; 2 Tex.Jur., p. 126, sec. 66; 2 Tex.Jur., pp. 160, 161, sec. 84; 15 Tex. Jur., p. 797, sec. 24, and p. 790, sec. 20; Texas W. Ry. Co. v. Wilson, 83 Tex. 153, 18 S.W. 325; Williams v. Kuykendall, Tex. Civ.App., 151 S.W. 629.

The rule directly applicable to the undisputed facts here obtaining—that is, that the use of this strip of land all the appellee's witnesses testified to was never at any time unaccompanied by appellant's own use of it also, for its own particular convenience and the prosecution of its own private business thereon as its individual property—is thus briefly stated in 15 Tex. Jur., page 797, section 24: "Exclusiveness of Use.—To establish a prescriptive right to an easement the use must be exclusive. The use of a way, for example, in common with others, or the general public, is not sufficient to create a prescriptive right, though the way be used for the prescriptive period. Especially is this true where there is no independent assertion of a right more pronounced and peculiar in behalf of the claimant and more indicative of an adverse claim than the open and notorious use with others. If the way is also used by the owner of the land, the use is not adverse and will not give a prescriptive right. This is for the reason that the same is not inconsistent with a license from the owner."

In the Texas case of Sassman v. Collins, supra [53 Tex.Civ.App. 71, 115 S.W. 339], which is directly in point, and in which our Supreme Court refused a writ of error, that principle was reiterated as follows:

"In this case it was shown that the owner of the servient estate likewise used this way for his own convenience and in connection with his farm. Therefore the use of the way by others could not become adverse, for it is held in Long v. Mayberry, 96 Tenn. 378, 36 S.W. 1040, Wood v. Reed (Sup.) 30 N.Y.S. 112, and Harkness

v. Woodmansee, 7 Utah 227, 26 P. 291, that the use of a way over the land of another is not deemed adverse where the way is also used by the owner of the land; and in such case use for the prescriptive period will not give a way by prescription. * * * In this connection the defendant requested the court to instruct the jury that the use of the way by others is not in law deemed adverse, where such way is at the same time used by the owner; and, if they believed that the way across the 219 acres of defendant was used by the owners of said tract of land during the time the plaintiffs were traveling it, they will return a verdict for defendant. This charge was erroneously refused.

"We therefore conclude that there was no such adverse user on the part of plaintiffs as would establish a right by prescription in their favor over the passway in question, and that, therefore, the court erred in refusing to instruct a verdict in behalf of appellant. * * * Reversed and rendered."

The other Texas cases adverted to are to the same general purport.

██ Under the facts the learned trial court evidently had closely in mind in making its quoted findings of both fact and law that appellant had so, at all times during its ownership of this land, exercised dominion and control over it, there seems no doubt that such use as those under whom appellee claimed (along with the general public) made of it, was never either exclusive in themselves, or unaccompanied by an inconsistent serviency, for its own particular purposes, the appellant also impressed upon it as its own property; that being true, such use never at any time ripened into a prescriptive right, because it was "not inconsistent with a license from the owner:"

Since, as indicated, and as the court without protest from the appellee so found, the facts of such participating use by the appellant itself were without any sort of controversion or question, and since it is likewise so undisputed that neither the appellee nor anyone else ever set up a claim to such prescriptive right until this suit was filed by the appellee on June 6 of 1936 so asserting the existence of the same, it is deemed unnecessary to either reiterate or to make a resume of such established facts here; but this brief collation of the outstanding features of them is quoted from the appellant's brief: "The railroad company used the strip of land for the following purposes and in the following ways, as shown by the undisputed testimony; (1) It was leased to Benson and used by him as a pasture for cattle; (2) it was fenced, and anyone using the trail in question necessarily passed through two gates in appellant's fence, however much they were left open or down; (3) the trail in question was used by appellant's employes to haul sand from the bayou banks in wagons to be used for filling and ballasting its railroad tracks; (4) in 1920 the strip of land in question was leased by appellant to the Sinclair-Gulf Oil Company as a pipe-storage yard; (5) the land was leased to the Houston Ice & Brewing Company, and they put in a pipe line along it; (6) there was a power line, a line of poles and transformers, put in there by appellant; (7) part of the strip was occupied up until 1925 by appellant's railroad track; (8) in 1925 appellant cut the east 38 feet of its 54 feet of land here involved down 4 or 5 feet below appellee's land, and paved it at its own cost, leaving a dirt strip, 16 feet wide in the form of a terrace, between the lowered 38 feet to the east and appellee's property on the west, making it impossible to drive from appellant's private driveway or pavement to appellee's property, and this terrace was always thereafter maintained and the grass kept cut by appellant railroad company; (9) ever since 1925 all of the strip of land in controversy, except the 16-foot wide dirt terrace, has been used by appellant as a private passageway for trucks loading and unloading into appellant's warehouse; during such period appellant has at all times policed the private drive; prevented parking on the west side thereof, kept undesirables off the premises, and, in every way, exercised full dominion and control over such land."

It would serve no needful purpose to further extend the discussion, on the conclusion that the undisputed facts showed, as a matter of law, that the appellant at all times not only exercised the usual dominion and control as its owner over the strip of land in controversy, using all of the same for its own convenience and in the prosecution of its individual business, along with such use as the appellee, her predecessors in title of her own land, and other members of the general public, made of it, the appealed from judgment will be reversed and the cause here rendered in appellant's favor.

Reversed and rendered.