

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

October 4, 1951

Hon. R. O'Hara Lanier, President
Texas Southern University
Houston 4, Texas

Opinion No. V-1298

Re: Authority of the Board
of Regents of Texas
Southern University to
prescribe new courses
of study during the
biennium beginning
September 1, 1951.

Dear Sir:

We quote from your recent letter as follows:

"The general appropriation bill,
House Bill 426, passed by the 52nd Leg-
islature, 1951, placed certain restric-
tions on courses of study, and set up
certain standards for size of academic
staffs and teaching loads for all state
institutions of higher education. Texas
Southern University naturally was with-
in the coverage of those provisions.
However, later in this session the Leg-
islature passed Senate Bill 286 which
apparently conflicts with the regula-
tory provisions of the general appro-
priation bill.

"It is the belief of the univer-
sity administration that Senate Bill
286 operates to relieve Texas Southern
University from the regulatory provi-
sions referred to above in House Bill
426. If this is true, it would mean
that in effect Senate Bill 286 placed
the university for all practical pur-
poses back within the operation of
Senate Bill 140, Acts of the 50th Leg-
islature, 1947, which set up the univer-
sity.

"I request your official opinion
regarding the effect of Senate Bill
286 upon the general appropriation
bill, House Bill 426, 1951, as well as
its effect upon Senate Bill 140, 1947."

The Texas State University for Negroes was
established by Senate Bill 140, Acts 50th Leg., 1947,
ch. 29, p. 36 (Art. 2643b, V.C.S.). The name of the
institution was changed to Texas Southern University
by House Bill 82, Acts 52nd Leg., 1951, ch. 65, p. 109
(Art. 2643f, V.C.S.).

Section 2 of Senate Bill 140, supra, reads
as follows:

"To provide instruction, training,
and higher education for colored people,
there is hereby established a university
of the first class in two divisions: the
first, styled 'Texas Southern University'
to be located at Houston . . . to be gov-
erned by a Board of Directors as provided
in Section 3 hereof; the second, to be
styled ' The Prairie View Agricultural and
Mechanical College of Texas' at Prairie
View . . . which shall remain under the
control and supervision of the Board of
Directors of The Agricultural and Mechani-
cal College of Texas. At Prairie View
Agricultural and Mechanical College shall
be offered courses in agriculture, the
mechanic arts, engineering, and the nat-
ural sciences connected therewith, to-
gether with any other courses authorized
at Prairie View at the time of the pas-
sage of this Act, all of which shall be
equivalent to those offered at the Agri-
cultural and Mechanical College of Texas.
The Texas Southern University shall offer
all other courses of higher learning, in-
cluding, but without limitation, (other
than as to those professional courses de-
signated for The Prairie View Agricultural
and Mechanical College), arts and sciences,
literature, law, medicine, pharmacy, den-
tistry, journalism, education, and other

professional courses, all of which shall
be equivalent to those offered at The
University of Texas. Upon demand being
made by any qualified applicant for any
present or future course of instruction
offered at The University of Texas, or
its branches, such course shall be es-
tablished or added to the curriculum of
the appropriate division of the schools
hereby established in order that the
separate universities for Negroes shall
at all times offer equal educational op-
portunities and training as that avail-
able to other persons of this state. .
. . " (Note: Texas Southern University
has been substituted herein for The
Texas State University for Negroes to
comport with House Bill 82, supra.)

In Article V of House Bill 426, Acts 52nd
Leg., R.S. 1951, ch. 499, p. 1228, the general ap-
propriation bill for the biennium ending August 31,
1953, appropriations are made to Prairie View Agri-
cultural and Mechanical College, Texas Southern
University, and other State institutions of higher
learning. Limitations on courses of study and
standards for size of academic staff and teaching
loads for these institutions are found in Sections
20, 21, and 22 of Article V, supra, at pages 1469-
1470. These sections provide in part as follows:

"Sec. 20. Limitations on Courses
of Study. None of the appropriations
herein made and authorized, whether upon
the State General Revenue Fund, local in-
structional funds, or any other receipts
and funds whatsoever except bequests and
gifts, shall be expended for the contin-
uance or establishment of a department of
instruction which was not in existence on
October 1, 1950, nor for courses of in-
struction required for any degree which
was not being offered by the institution
on October 1, 1950, . . ."

"Sec. 21. Standards for Size of Ac-
ademic Staffs. The number of full-time
teachers employed in each teaching insti-
tution named in this Article shall not,

for the fiscal year beginning September
1, 1951, exceed the ratio of one such
teacher for each fifteen (15) full-time
student equivalents enrolled in such in-
stitution on the sixth class day of the
spring semester of 1951 or the sixth
class day of the fall semester of 1951,
whichever is the greater number.

". . .

". . . The intent of the Fifty-
second Legislature to limit the number
of teachers employed at each institution
to a reasonable number so that adequate
salaries may be paid those who are em-
ployed, and to preclude overstaffing
which requires the money appropriated
to be divided between too many teachers."

"Sec. 22. Teaching Loads. During
the biennium for which these funds are
appropriated, it is declared the intent
of the Fifty-second Legislature that the
Governing Boards and heads of all State
institutions of higher education shall
offer only such courses and teach only
such classes for which there is such a
demand that each full-time teacher shall
have a teaching load that is economical-
ly justified; that they shall offer no
elective course with an enrollment of
less than ten (10) students in the lower
division classes, and six (6) students
in the upper division classes, and fur-
ther that required courses under these
limits should be kept to a minimum. . . ."

Senate Bill 286, Acts 52nd Leg., R. S. 1951,
ch. 409, p. 752, codified as Article 2643b-1, V.C.S.,
provides as follows:

"Section 1. The Board of Directors
of the Agricultural and Mechanical Col-
lege of Texas shall prescribe the courses
of study and the degrees to be offered at
the Prairie View Agricultural and Mechani-
cal College. The Board of Regents of
Texas Southern University shall prescribe
the courses of study and degrees to be

offered at the Texas Southern University.
The courses of study and the degrees au-
thorized by the governing Boards of the
respective institutions named above shall
conform to the provisions of Senate Bill
No. 140, Acts of the 50th Legislature,
1947.

"Sec. 2. Funds appropriated to the
Prairie View Agricultural and Mechanical
College and the Texas Southern University
by Article V of House Bill No. 426, Acts
of the 52nd Legislature, 1951, may be ex-
pended for the purpose of conducting such
courses of study as may be prescribed
under the provisions of Section 1.

"Sec. 3. All laws and parts of laws
in conflict with the provisions of this
Act are hereby repealed to the extent of
such conflict only."

The legislative history relative to House
Bill 426 and Senate Bill 286 reveals that the last
legislative action concerning House Bill 426 was the
adoption of a Conference Committee Report thereon by
the House on May 10, 1951. The last legislative
action concerning Senate Bill 286 was the adoption
of a Conference Committee Report thereon by the Sen-
ate on June 8, 1951. Insofar as legislative action
is involved, Senate Bill 286 was the later expres-
sion of the legislative will. If any provisions of
these two acts are in conflict, "the first in time
or position must give way to the last, and the lat-
ter act will stand as the final expression of the
legislative will." Ex parte de Jesus de la O, 227
S.W. 2d 212, 213 (Tex. Crim. 1950). See Att'y Gen.
Op. V-990 (1950), and authorities there cited.

The conclusion that Senate Bill 286 will
control in case of conflict between its provisions
and those of House Bill 426 is supported also by
the rule that a specific statute (Senate Bill 286)
will control over a general statute (House Bill 426)
enacted at the same session of the Legislature, re-
gardless of the date of enactment of the two stat-
utes. In such a situation, the specific statute
will be treated as an exception to the general pro-
vision. Cain v. State, 20 Tex. 355 (1857); Wright

v. Broeter, 145 Tex. 142, 196 S.W.2d 82 (1946).

The 52nd Legislature in Section 1 of Senate Bill 286 expressly provided that the courses of study to be offered at Texas Southern University and Prairie View Agricultural and Mechanical College "shall conform to the provisions of Senate Bill 140, Acts of the 50th Legislature, 1947." In Section 2 it further provided that the appropriations granted to these two schools by Article V of House Bill 426 "may be expended for the purpose of conducting such courses of study as may be prescribed under the provisions of Section 1." The provision in Senate Bill 140 requiring the establishment of courses upon demand of qualified applicants is clearly in conflict with the provisions of Section 20 and with Sections 21 and 22 of Article V in House Bill 426 insofar as these sections would curtail the offering of courses which have been demanded.

The effect of Senate Bill 286 is to except Texas Southern University and Prairie View Agricultural and Mechanical College from the restrictions appearing in Sections 20, 21, and 22 of Article V, House Bill 426, where there is a demand for a course in accordance with the provisions of Senate Bill 140. Since these schools are required to establish such courses as are demanded, it is evident that the institution might not be able to comply with this requirement and at the same time maintain its staff and minimum course enrollment within the limits set out in Sections 21 and 22. However, we are of the opinion that the schools are not authorized to offer duplicate sections in any elective course for which the enrollment does not meet the minimum specified in Section 22.

## SUMMARY

Senate Bill 286, Acts 52nd Leg., R. S. 1951, ch. 409, p. 752, exempts Texas Southern University from the provisions of Sections 20, 21, and 22 of Article V of House Bill 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, (the general appropriation bill) relating to limitations on courses of study, standards for size

of academic staffs, and teacher loads when a course is offered upon demand pursuant to the provisions of Senate Bill 140, Acts 50th Leg., 1947, ch. 29, p. 36, codified as Article 2643b, V.C.S.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

CEO:awo

Yours very truly,

PRICE DANIEL
Attorney General

By Chester E. Ollison
              Assistant